IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOUSTAFA EL-BAKLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 2767 |
| ) | |
| AUTOZONE, INC., ROB HARRIS, ) | HONORABLE CHARLES R. NORGLE |
| JUAN GUTIERREZ, and, ) | |
| CHRIS RAMOS, ) | |
| Defendants. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendants' Motion for Summary Judgment is denied.

**I. BACKGROUND[1]**

**A. Facts**

This case arises out of Plaintiff Moustafa El-Bakly's employment and eventual termination from Defendant Autozone, Inc.'s Franklin Park, Illinois facility. Plaintiff Moustafa El-Bakly ("El-Bakly") is of Egyptian heritage, and an American citizen. On May 3, 2002, he started his job as a Commercial Driver at Defendant Autozone, Inc. ("Autozone"). That same day, Autozone alleges that El-Bakly received, read, and signed the company's Diversity Mission

---
[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

Statement. In addition to the Diversity Statement, El-Bakly received Autozone's sexual harassment policy handbook, entitled "Preventing Sexual Harassment, a Fact Sheet for Autozoners." During his employment at Autozone, El-Bakly initially worked as a Commercial Driver, and was later promoted to assistant Commercial Specialist. His duties included pulling parts, unloading trucks, cleaning the parking lot, and working as the primary commercial specialist when his supervisor was not at the office.

In the summer of 2003 El-Bakly traveled to Egypt. Upon his return to work, Autozone claims that Defendant Rob Harris ("Harris"), an Autozone employee, informed El-Bakly that he was required to wear a red shirt instead of a gray one[2], and no longer had a password for the store computer. El-Bakly, on the other hand, alleges that since his return from his trip, he was demoted back to the title of "Commercial Driver" and that Harris forced him to perform tasks not commensurate with his job, such as cleaning bathrooms and other janitorial duties.

According to El-Bakly, the alleged discrimination began in May 2002, which he believes was a result of the American war in Iraq. El-Bakly claims that he attempted to explain to Harris, Gutierrez, and Ramos that he was of Egyptian heritage, not of Iraqi descent. In response, El-Bakly claims that he was told that it was all "the same shit." Additionally, El-Bakly claims that Harris called him "Saddam," "Osama Bin Laden," "a terrorist," and "a cousin of Saddam Hussein" on a daily basis. El-Bakly also alleges that Enrique Alejandre ("Alejandre"), a co-worker at Autozone, laughed and was complicite when other employees called El-Bakly a "terrorist."

According to El-Bakly, Gutierrez, the Assistant Store Manager, was the worst offender.

---

[2]Defendants do not explain the significance of this issue.

El-Bakly claims that Gutierrez never addressed him by his proper name, instead calling El-Bakly "fucking Muslim," or "fucking terrorist." El-Bakly alleges that this occurred "every time in front of customers." In one instance, El-Bakly claims that Gutierrez told a customer, "[H]ey, Moustafa is from Afhanistan. He [sic] terrorist." Finally, on February 19, 2004, El-Bakly complained to Jose Gomez ("Gomez"), Autozone's District Manager, and to Willie Bush ("Bush"), the Regional Human Resources Manager.

Bush began his investigation into El-Bakly's claims by interviewing Harris, Chris Ramos ("Ramos"), Gutierrez, and other Autozone employees. Bush also requested that El-Bakly provide a written statement of the events; however, El-Bakly never did so. Then, on February 26, 2004, Bush met with El-Bakly. El-Bakly stated that he did not have a written statement, and the he did not want to provide one. He claimed that things at work were fine, and that the insults had ceased. Based on the information Bush obtained through his investigation, he conducted a Diversity and Sexual Harassment training course with the entire Autozone store on February 21, 2004. El-Bakly did not attend the course on February 21; however he did attend a separate Diversity and Sexual Harassment training course on February 26, 2004. El-Bakly stated that after he filed a complaint with Bush, all comments and behavior stopped. But there is more to come.

Shortly thereafter, Harris reported to Bush that El-Bakly made comments about drug use. Bush conducted an investigation through interviews with Harris and Alejandre. Recall, however, that Harris was one of the name-callers. El-Bakly alleges that Harris called him "Saddam," "Osama Bin Laden," and a "terrorist" on a daily basis in front of customers. Furthermore, El-Bakly claims that Harris would buy pizzas for the store containing pork, a forbidden food in the

3

Muslim religion. Harris would push El-Bakly to eat pork "every single minute of every single day."

Then, on June 1, 2004, Bush met with El-Bakly, this time to discuss the drug use allegations. At this interview, Autozone claims that El-Bakly stated that he asked Harris and Alejandre the difference between being under the influence of drugs or alcohol. However, later in the interview, El-Bakly changed his answer and denied having any conversation with Harris and Alejandre. El-Bakly claims these conflicting statements are a result of his limited understanding of the English language. Bush also asked El-Bakly to provide a written statement as part of the investigation. El-Bakly refused to do so, and said he would only give a statement after speaking with a lawyer. Bush stated that any information resulting from the investigation was confidential, and that without his statement, the investigation would continue and a decision would be made based on the gathered information. Then, on June 3, 2004, Regional Manager Rich Merchant ("Merchant") terminated El-Bakly. According to Autozone, El-Bakly was terminated for loss of confidence as a result of the investigation, and the statements of Harris and Alejandre.

However, El-Bakly alleges that Autozone's reasons for his termination were merely pretext, and that he was terminated in retaliation for his complaints of harassment and discrimination.

## B. Procedural History

On June 28, 2004, El-Bakly filed his First Amended Complaint, alleging violations of Title VII, Retaliation, hostile work environment, and Illinois state law claims of Intentional

4

Infliction of Emotional Distress and Defamation per se.³ Then, on December 12, 2005, Autozone filed its Motion for Summary Judgment. On January 18, 2006 El-Bakly filed his Response, and Autozone Replied on March 28, 2006. Leave was granted for El-Bakly to file a Sur-Reply on April 14, 2006. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold,

---

³Neither side raise the issue of El-Bakly's EEOC claims, or if he received a Right to Sue Letter.

Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Title VII- 42 U.S.C. § 2000e

Pursuant to Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see Whittaker v. Northern Illinois University, 424 F.3d 640, 645 (7th Cir. 2005). In order to prevail under on a race discrimination claim under Title VII, El-Bakly must "either show direct evidence of discriminatory motive or intent, or rely on the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Bio v. Federal Express Corp., 424 F.3d 593, 596 (7th Cir. 2005).

Under the McDonnell Douglas method, a plaintiff who alleges racial discrimination must

6

establish four elements: (1) that he is a member of a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated individuals who are not members of his protected class. See Ballance v. City of Springfield, 424 F.3d 614, 617 (7th Cir. 2005); Whittaker, 424 F.3d at 645.

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, non discriminatory reason for the decision. Ballance, 424 F.3d at 617. If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. Id; Bio, 424 F.3d at 596. To establish pretext, the plaintiff may show that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were insufficient to motivate the decision. Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000). The failure to establish any one of the initial four elements defeats a plaintiff's discrimination claim. Id. With these principles in mind, we turn to El-Bakly's claims.

## C. El-Bakly's Title VII Claims

### *1. Genuine questions of material fact exist as to employer liability*

El-Bakly alleges a "hostile work environment" claim in Count One of the Complaint. Under Title VII, employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Courts have interpreted this statute to prohibit employers from forcing employees to "work in a discriminatory hostile or

7

abusive environment." Shanoff v. Ill. Dept. of Human Serv., 258 F.3d 696, 701 (7th Cir. 2001) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Workplace discrimination in the form of "'intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" violates Title VII. Harris, 510 U.S. at 21 (citations omitted) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); see also Tutman v. WBBM-TV, Inc./CBS, Inc., 209 F.3d 1044, 1048 (7th Cir. 2000). "By its terms, this provision of Title VII proscribes only workplace discrimination . . . it is not a 'general civility code' designed to purge the workplace of all boorish or even all harassing conduct." Berry v. Delta Airlines, Inc., 260 F.3d 803, 808 (7th Cir. 2001).

To survive summary judgment on a hostile work environment claim, a plaintiff is "required to establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 863 (7th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004)). "A plaintiff bringing a hostile environment claim must establish that the workplace was both subjectively and objectively offensive." Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005) (citing Rogers v. City of Chicago, 320 F.3d 748, 752 (7th Cir. 2003)). "A workplace is objectively offensive when a reasonable person would find it hostile or abusive considering all the circumstances." Id. Factors relevant to determine whether the workplace is objectively offensive include: "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or

8

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 902 (7th Cir. 2005) (quoting Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 534 (7th Cir. 1993)). The workplace is "subjectively hostile when the worker actually perceives it as such." Ezell, 400 F.3d at 1048 (citing Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807 (7th Cir. 2000)). "The workplace that is actionable is the one that is hellish." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997).

Furthermore, an employer is liable if either the plaintiff's supervisor created the hostile work environment, Mason v. S. Ill. Univ., 233 F.3d 1036, 1043 (7th Cir. 2000) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998), or a co-worker created the hostile work environment, and the employer was "negligent either in discovering or remedying the harassment." Mason, 233 F.3d at 1043; Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

In its Motion, Autozone concedes that El-Bakly is a member of protected class, that the alleged discrimination was based on his religion, race, and national origin, and if true, this is severe and pervasive enough to maintain a claim of harassment. See Def.'s Mem. in Supp. of Summ. J., at 2. However, Autozone claims that there is no basis for employee liability.

Specifically, Autozone claims that it exercised reasonable care to prevent any harassment by virtue of its anti-harassment and equal opportunity policies in place at the time of the alleged conduct. Autozone further claims that these policies were distributed to all employees upon the start of employment, and that certain procedures are in place to report any alleged misconduct.

9

However, construing the evidence in the record in favor of El-Bakly, there are genuine questions as to whether Autozone acted upon these problem solving procedures when it first learned of the alleged misconduct. El-Bakly alleges he complained to two of his managers, Harris and Gomez, prior to filing his complaint with Bush. Furthermore, El-Bakly claims that Gomez verbally reprimanded Ramos, yet this did not remedy the situation. As a result, the evidence in the record provided by El-Bakly at the least creates a genuine issue of material fact as to whether Autozone acted in a sufficient manner to address El-Bakly's concerns. See Velez v. City of Chicago, 442 F.3d 1043, 1047 (7th Cir. 2006). A reasonable jury could find that Autozone turned a blind eye to El-Bakly's claims.

### 2. *Genuine questions of material fact exist as to whether Autozone's reasons for termination were pretextual*

#### a. *Similarly situated claim*

In regards to El-Bakly's discrimination claim, Autozone concedes that El-Bakly belongs to a protected class, and that until his termination, he performed his job satisfactorily, and had met Autozone's legitimate expectations. See Def.'s Mem. in Supp. of Summ J., at 8. Autozone, however, argues that El-Bakly's Title VII claim fails because he cannot satisfy the similarly situated prong of the McDonnell Douglas test. A similarly situated employee "is one who is 'directly comparable to the plaintiff in all material aspects.'" Bio, 424 F.3d at 596 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)); see Walker, 410 F.3d at 396 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

To determine whether two employees are similarly situated, the court must "look at all relevant factors, including whether the employees "(I) held the same job description, (ii) were

10

subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications- provided the employer considered these latter factors in making the personnel decision.'" Bio, 424 F.3d at 596 (quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003)).

Autozone argues El-Bakly cannot establish the similarly situated prong of the McDonnell Douglas test. According to Autozone, El-Bakly has not established that non-Egyptians, or non-Muslims were treated differently than himself. However, El-Bakly alleges that Alejandre, a non-Muslim, was not subjected to the same adverse employment actions. El-Bakly alleges that he was made to clean the bathrooms and sweep the parking lot, two tasks that were outside of his job description. Alejandre, on the other hand, was not required to do the same. El-Bakly was also the only employee to lose his password privileges on the company computer, and suffer a demotion, from "Commercial Specialist" to "Commercial Driver." Considering these facts in a light most favorable to El-Bakly, a genuine issue of material fact exists as to the similarly situation prong of the indirect-burden shifting test.

### b. Legitimate Reason for Termination may have been pretextual

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Stewart, 207 F.3d at 378 (quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999)). The court will not "sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." Id. Moreover, it is not sufficient to prove that the reason was doubtful or mistaken. Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1, 147 F.3d 535, 541 (7th Cir. 1998). Pretext does not mean simply a mistake, but instead a lie, "specifically a phony reason for some action." Id.

11

(quoting Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996)). The only concern is whether the legitimate reason provided by the employer is in fact an honest one. See Stewart, 207 F.3d at 378.

Here, Autozone claims that it terminated El-Bakly due to a loss in confidence based on allegations that El-Bakly had taken illegal drugs. According to Autozone, Harris, the store manager reported to Bush that El-Bakly made certain drug related comments. When Bush and El-Bakly met, El-Bakly refused to give a statement regarding the allegations until he spoke with an attorney. Additionally, El-Bakly claims that he never had a history of poor performance during his employment, and Autozone has submitted no evidence to show that El-Bakly has committed other infractions in the past. El-Bakly further argues that the conversation with Harris was the result of a misunderstanding based on the language barrier. Based on these facts, a reasonable jury may conclude that Autozone's proffered reason for its decision may have been "a phony reason," or in fact, a dishonest one. See Crim, 147 F.3d at 541; Stewart, 207 F.3d at 378. As a result, genuine issues of material fact exist as to whether Autozone's business decision to terminate El-Bakly was pretextual. Therefore, because the court is forced to make an inference in regards to Autozone's true motives, summary judgment is not proper at this time.

### 3. Remaining State Court Claims

Lastly, El-Bakly alleges Illinois state law claims of intentional infliction of emotional distress ("IIED"), and defamation *per se*.

Under Illinois law, "a statement is defamatory if it harms the reputation of another, lowering him in the eyes of the community, or if it discourages others from associating with

him." Cody v. Harris, 409 F.3d 853, 857 (7th Cir. 2005) (citing Bryson v. News Am. Publ'ns, Inc., 174 Ill.2d 77 (Ill. 1996)). Certain statements are considered "defamatory *per se* because they are so obviously and materially harmful to a plaintiff that his injury may be presumed and he does not need to prove actual damages to recover." Id. The five categories of statements under defamation *per se* are: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those imputing a lack of ability, or that prejudice a party in his trade, or business; and (5) those imputing adultery or fornication. Id.

Here, El-Bakly alleges that Gutierrez and Alejandre made comments to customers that El-Bakly was a terrorist, related to Saddam Hussein, and that he was Osama bin Laden. Additionally Harris told Bush that El-Bakly may have used drugs and driven after smoking marijuana. However, El-Bakly has stated that he only had an innocent conversation with Harris about drug use, and that this misunderstanding was only due to El-Bakly's difficulty with the English language. These statements caused Bush, and the Regional Manager to have a loss in confidence in El-Bakly. Because there are different explanations made as to these statements, the court would be forced to make an inference as to their true meaning. That is the function of the jury. The court's role "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Keri v. Bd. of Trustees of Purdue Univ., 458 F.3d 620, 628 (7th Cir. 2006). Therefore, summary judgment must be denied on El-Bakly's defamation per se claim.

El-Bakly also alleges a state claim of IIED. Under Illinois law, a plaintiff may "recover damages for intentional infliction of emotional distress only if she establishes that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict or knew there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." Naeem v. McKesson Drug Co., 444 F.3d 593, 604-05 (7th Cir. 2006) (citing Van Stem v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir. 1997)).

Autozone does not develop its argument as to this claim, instead merely devoting one sentence at the end of its memorandum in support of summary judgment. Autozone argues that "El-Bakly cannot establish that Defendant intended to inflict severe emotional distress or knew that it was likely to occur; in fact, there is no evidence to establish this element necessary for a claim of intentional infliction of emotional distress." Def.'s Mem. in support of Summ. J., at 15. However, Autozone misses the mark. El-Bakly is not required to prove each element of his claim at the summary judgment stage. He is merely required to establish a genuine issue of material fact that would prohibit the court from granting the motion. Tri-Gen Inc. v. Int'l Union of Operating Engineers, Local 150, 433 F.3d 1024, 1039 (7th Cir. 2006).

El-Bakly has raised sufficient questions of material fact to prohibit summary judgment on his IIED claim. He asserts that Gutierrez's and Ramos' actions were extreme and outrageous, and that El-Bakly has suffered severe emotional distress. Defendants do not dispute this in their motion for summary judgment. A factual issue remains, as to whether the individual defendants knew that their actions would cause El-Bakly severe emotional harm. Gutierrez and Ramos called El-Bakly names on a constant basis in front of customers. They called him a terrorist, and a relative to Saddam Hussein, who is currently on trial for war crimes. A reasonable jury could

14

find that these statements about El-Bakly's heritage and ethnicity in this day and age could cause El-Bakly severe emotional distress. As a result, summary judgment is not proper on the IIED claim.

### III. CONCLUSION

For the foregoing reasons, the court denies Defendant's Motion for Summary Judgment on all counts.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 9-15-06