**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOUSTAFA EL-BAKLY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 2767 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| AUTOZONE, INC. a Nevada Corp., | ) | |
| Rob Harris, Juan Gutierrez, and | ) | |
| Chris Ramos, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's first motion *in limine* (DE 83), Defendants' second motion *in limine* (DE 89), and Plaintiff's motion *in limine* (DE 93). The motions are fully briefed. Collectively the parties' motions seek resolution of more than twenty evidentiary issues prior to the trial set to commence April 21, 2008. This Court already denied as moot Defendants' first motion *in limine* with respect to certain witnesses whom Defendants sought to exclude from testifying. This opinion addresses the remaining issues raised in Defendants' first motion *in limine* as well as Defendants' second motion *in limine* and Plaintiff's motion *in limine*. For the reasons set forth in detail below, Defendants' first motion *in limine* is GRANTED in part and DENIED in part, Defendants' second motion *in limine* is GRANTED in part and DENIED in part, and Plaintiff's motion *in limine* is GRANTED in part and DENIED in part.

# I. Defendants' First Motion *in Limine*

## A. Plaintiff's Exhibits

Defendants move *in limine* to exclude certain documents and exhibits designated by Plaintiff in the remainder of their first motion *in limine*. Initially, Defendants raise an objection to Plaintiff's general designation in the Pretrial Order to the "entire production" as part of its exhibit list for trial. Plaintiff submitted his exhibits to the Court as part of the Pretrial submissions. See DE 88. The parties were required to designate the specific exhibits anticipated for use at trial as part of their Pre-Trial submissions. Plaintiff's designation of his entire production does not comply with that mandate and is contrary to the purpose of narrowing the universe of relevant and admissible materials as exhibits in advance of trial. To the extent that documents contained in Plaintiff's document production are not designated and included in the exhibits made part of the record at Docket Entry 88, they are excluded and may not be introduced at trial, other than for rebuttal purposes.

### 1. *Medical Records*

Defendants seek to bar introduction of Plaintiff's medical records, most of which are designated as part of Plaintiff's Exhibit 7. Defendants initially argue that Plaintiff's medical records are inadmissible because Plaintiff failed to authenticate them as required under Fed. R. Evid. 901. Defendants further argue that Plaintiff will be unable to do so because he has failed to list any witnesses in the Pretrial Order who can authenticate the records — such as the treating physician or a custodian of records. Defendants also contend that the records cannot be authenticated under Fed. R. Evid. 902. Defendants finally assert that the medical records are inadmissible hearsay under Fed. R. Evid. 802. Plaintiff sought certification of certain medical

records pursuant to Fed. R. Evid. 902(11) in order to cure the authenticity problem and was able to do so for Exhibits 7(c), 7(e), and 7(f).

    a.   Exhibits 7(a), 7(b), 7(d), 7(g)

In its March 14, 2008 order, the Court directed counsel for Plaintiff to advise the Court and defense counsel whether Plaintiff intended to seek certification of certain medical records in order to address the authenticity issues raised by Defendants in their motion *in limine*. In a letter dated March 28, 2008 Plaintiff indicated that he was in the process of seeking certification for Plaintiff's Exhibits 7(a), 7(c), 7(e), and 7(f) from two separate medical facilities. On March 31, 2008 the Court received notice of Plaintiff's certification of records contained at Exhibits 7(c), 7(e), and 7(f) from Couret Medical & Urgent Care, S.C. As of this date, the Court received no further notice of Plaintiff's efforts to certify Exhibit 7(a). Because Plaintiff has not listed as a witness the custodian of records at any of the medical providers noted on Exhibits 7(a), 7(b), 7(d), and 7(g), those exhibits will be excluded and Plaintiff will be barred from using them at trial unless Plaintiff can obtain certification.

    b.   Exhibit 7(c)

Defendants argue that Exhibit 7(c), Bates labeled 109, does not fall within the business record exception to the hearsay rule (Fed. R. Evid. 803(6)). Exhibit 7(c) is a letter from Dr. Couret addressing Plaintiff's complaints of harassment at work and its effect on his medical condition. Plaintiff failed to respond to Defendants' assertions regarding the inadmissibility of this document. The Court agrees that this letter does not fall within the business record exception to the hearsay rule set forth at Fed. R. Evid. 803(6). This record does not appear to have been prepared in the ordinary course of a medical facility's operations. Furthermore, this letter does not fall within the exception set forth at Fed. R. Evid. 803(4), which excepts medical

records containing statements that would otherwise be hearsay but are directed at diagnosis and treatment of the declarant's medical condition. This letter does not appear to be a record taken while Mr. El Bakly's was being treated, but rather is a letter summarizing Dr. Couret's assessments of the cause of Mr. El Bakly's condition. This is inadmissible hearsay outside of any allowable exceptions and accordingly Plaintiff's Exhibit 7(c) is excluded.

### c. Exhibit 7(e) and 7(f)

Defendants argue that, even if authenticated, Exhibits 7(e) and 7(f) nevertheless are inadmissible hearsay. Exhibit 7(e) consists of two "return to work" letters issued from Dr. Couret's office, while Exhibit 7(f) includes approximately ten handwritten notes recording medical and other information apparently gathered during Plaintiff's visits to Dr. Couret's office. Defendants specifically object to the portions of Exhibit 7(f) that are Bates numbered 119, 121, 122, 124, 147, and 149, which appear to have been written between February and May of 2004 and reflect statements by Plaintiff that "coworkers are harassing" and "call[ing] [Plaintiff] names." Defendants insist that no hearsay exception applies pursuant to which such statements might be admissible. In particular, Defendants assert that (i) the statements are not the admissions of a party opponent when offered by Plaintiff himself; (ii) do not fall within Rule 803(1) or (3) because they are not contemporaneous; and (iii) do not fall within Rule 803(4) because they do not relate to the heart condition for which Plaintiff was being treated by Dr. Couret and because the statements purport not only to report a condition, but also to assess fault.

Plaintiff offered no written response to Defendants' arguments concerning Exhibits 7(e) and 7(f). At the Pre-Trial Conference, Plaintiff's counsel explained that Plaintiff simply seeks to use the records to substantiate Plaintiff's condition and to explain his unavailability to attend an AutoZone diversity training meeting. Pre-trial Conference Transcript ("PTC Tr.") at 16. When

advised of that limited purpose, the Court suggested that the parties consider a stipulation as to the possible use of the medical records (or a stipulation that would obviate the need to use them at all). As of the date of this ruling, no such stipulation has been tendered and thus the Court reserves its ruling as to Exhibit 7(e).

The Court provisionally rules that the documents in Exhibit 7(f) are not admissible. The only hearsay exception that presents a close call is Fed. R. Evid. 803(4), and even under that exception the statements purporting to assess blame on Plaintiff's co-workers for "harassing" and calling Plaintiff names probably would not be admissible and would need to be redacted. However, because (i) the records are handwritten, (ii) it is unclear who made the records, and (iii) neither Dr. Couret nor any other treater from his office is identified on Plaintiff's witness list, the probative value of the records is minimal and is substantially outweighed by the prejudicial impact of admitting them without affording Defendants any possibility of cross-examination. Accordingly, the Court provisionally rules that the records at Exhibit 7(f) will be excluded under Fed. R. Evid. 403.

In sum, the Court denies Defendant's motion *in limine* with respect to Exhibit 7(e) and reserves its ruling on the admissibility of that exhibit. However, the Court grants Defendant's motion with respect to Exhibit 7(f), absent some stipulation by the parties with respect to this exhibit.

### 2.  *Affidavit of Daniel Probo*

Plaintiff proposes, as Plaintiff's Exhibit 5, the affidavit of Daniel Probo. Defendants seek to exclude Mr. Probo's affidavit on the grounds that it is inadmissible hearsay under Fed. R. Evid. 801. Plaintiff argues that the affidavit overcomes the hearsay rule as a party admission under Fed. R. Evid. 801(a)(2). The Court agrees with Defendants. As an initial matter, it

appears that the affidavit in question was never properly sworn before a notary and thus is not reliable. Moreover, even if the affidavit had been properly executed, affidavits of witnesses generally are not admissible into evidence at trial to resolve disputed issues of fact even if the affidavit was used during summary judgment because they are hearsay under Fed. R. Evid. 801. See *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1993) ("affidavits are ordinarily not admissible evidence at trial"); see also *Presto v. Illinois Dept. of Human Services*, 2003 WL 21196237, at *2 (N.D. Ill. May 21, 2003). Plaintiff's assertion that Daniel Probo's affidavit qualifies as a party admission pursuant to Fed. R. Evid. 801(a)(2) is belied by the affidavit itself. The affidavit was signed in 2005 and states on its face that Daniel Probo has not worked at AutoZone since October of 2003. A statement qualifies as a party admission under Fed. R. Evid. 801(a)(2) only when the statement is "made during the period of agency" by the declarant. *Young v. James Green Mgmt., Inc.*, 327 Fd 616, 623 (7th Cir. 2003). Accordingly, the affidavit of Daniel Probo, proposed as Plaintiff's Exhibit 5, is excluded.

### 3. *EEOC Charge*

Plaintiff lists his EEOC charge as proposed Plaintiff's Exhibit 1. At the Pre-Trial Conference held on April 2, 2008, Defendants withdrew their objections and their motion *in limine* with respect to Plaintiff's EEOC charge. Therefore, under the operative language of the Pre-Trial Order, Plaintiff's Exhibit 1 will be received into evidence.

### 4. *Plaintiff's Tax Returns from 1999-2002*

Plaintiff offers his tax returns from 1999 through 2005 as proposed Plaintiff's Exhibit 2. Defendants argue that Plaintiff's tax returns from 1999 through 2002 are irrelevant because Plaintiff only claims damages from 2004 forward, and that the returns do not relate to his claims or damages in any event. The Court concludes that Plaintiff's tax returns and W-2s from 1999-

2001 are irrelevant to his claims or damages. According to the records provided, it appears that Plaintiff was a student and not yet working at AutoZone through the end of 2001. According to the stipulated uncontested facts in the Pretrial Trial Order, Plaintiff started with AutoZone on May 3, 2002. See DE 85, proposed Pretrial Order ("PTO") at 2. Plaintiff provides the W-2 issued by AutoZone to him in 2002, as well as his tax returns from 2002, reflecting the amount of wages earned that year. At this time, the Court believes that, depending on Plaintiff's theory, these documents reflecting wages earned in 2002 and 2003 may be relevant for purposes of determining Plaintiff's damages. The Court notes that Defendants did not object to Plaintiff's W-2s and tax returns for 2004 forward. Accordingly, Defendants' motion is granted in part and the W-2s and tax returns from 1999 to 2001 are excluded. Defendants' motion is denied part with respect to the tax returns and W-2s provided for 2002 and 2003 while Plaintiff was working at AutoZone and those records from 2002 forward in Plaintiff's Exhibit 2 will be received into evidence along with the 2004-2005 information already part of that exhibit to which Defendants did not previously object.

### 5. *AutoZone's Financial Statements*

Plaintiff provides some financial information related to Defendant AutoZone's profits and net worth at proposed Exhibit 6 (Bates labeled 87-95, 101). Defendant AutoZone acknowledges that such information may be relevant to Plaintiff's claim for punitive damages. Defendant argues, however, that this information has the potential to create unfair prejudice against Defendant AutoZone and to confuse the jury under Fed. R. Evid. 401 and 403. Defendant AutoZone therefore asks the Court to prohibit Plaintiff from introducing evidence of AutoZone's financial condition or net worth pursuant to Fed. R. Evid. 401 and 403, at least until

(1) this Court rules that Plaintiff has made a case for punitive damages or (2) the jury has returned a verdict in Plaintiff's favor and awarded him compensatory damages.

At this stage, the Court notes that Plaintiff *may* have claims for punitive damages with respect to his Title VII claims and his Illinois state law defamation *per se* claim. The Title VII statutory scheme in conjunction with the Civil Rights Act of 1991 allows for punitive damages where a plaintiff can show that the defendant engaged "in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court interprets "malice" or "reckless disregard" as the employer's knowledge that it may be violating federal law, and not specifically as an awareness that it is engaging in discrimination. See *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999) ("[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages."); see also *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 661 (7th Cir. 2001).

Punitive damages are not available for Plaintiff's state law claim of intentional infliction of emotional distress. See *Kneirem v. Izzo*, 22 Ill.2d 73, 88 (1961) (holding that punitive damages are unavailable for such a claim "since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive"). However, punitive damages may be available for Plaintiff's defamation *per se* claim under Illinois law if Plaintiff can show that Defendants acted with "actual malice." See *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 109-110 (1996) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) and stating that a plaintiff may recover punitive damages in a defamation action where it shows that the defendant acted with actual malice, although Illinois

law remains unclear on whether such damages can be recovered with a showing of less than actual malice).

Whether punitive damages are available, however, does not end the inquiry. Federal law and Illinois law differ in their treatment of the relevance of financial data reflecting a defendant's profits or net worth as evidence supporting a determination of punitive damages. Under Illinois law, it is well-established that a defendant's financial status is a relevant factor relevant in determining punitive damages. See *Pickering v. Owens-Corning Fiberglass Corp.*, 265 Ill.App.3d 806, 818 (Ill. App. 5th Dist. 1994). However, the federal law in this circuit is decidedly less clear this area. The Seventh Circuit has suggested that financial information regarding a defendant corporation's net worth or profits may be irrelevant to the consideration of an award of punitive damages, at least under federal law. *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 508 (7th Cir. 1992); *Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220 (N.D. Ill. 1996). But several courts in this district have opined that *Zazu* has been interpreted too broadly and that a defendant corporation's financial data may be a relevant factor to an award of punitive damages. See *Koblosh v. Adelsick*, 1997 WL 311956, at *2 (N.D. Ill. June 5, 1997) (denying defendant's motion in limine with respect to its request to exclude financial information because punitive damages were potentially available but also holding that admissibility of such information only accrues upon a finding that the defendant acted with reckless indifference to the plaintiff's rights); see also *Jones v. Scientific Colors, Inc.*, 2001 WL 902778, at *1 (N.D. Ill. July 3, 2001) (finding a defendant's financial information relevant for discovery purposes where punitive damages are available for the claims at issue); *Equal Employment Opportunity Comm'n v. Staffing Network LLC*, 2002 WL 31473840, at *1-2 (N.D. Ill. Nov. 4, 2002) (same).

This Court finds that Defendants' financial information is relevant and can be considered if Plaintiff succeeds in making a showing that he has a colorable claim for punitive damages in this case. At the same time, the Court concludes that it would be prejudicial to Defendants and confusing to the jury to allow this evidence to be presented prior to making such a showing. Because it is premature to opine on whether Plaintiff can make a colorable claim for punitive damages for either his state law defamation *per se* claim or his Title VII claim, Defendants' motion *in limine* is provisionally granted pursuant to Fed. R. Evid. 403 and Plaintiff is barred from presenting testimony or evidence before the jury related to Defendant AutoZone's financial condition. However, following the reasoning of Judge Kocoras's opinion in *Koblosh v. Adelsick*, 1997 WL 311956 (N.D. Ill. June 5, 1997), the Court will revisit this issue during the trial if it appears that Plaintiff may be able to make a colorable claim for punitive damages. At the Pre-Trial Conference held April 2, 2008, counsel for Plaintiff indicated on the record that he has no objection to this approach. See PTC Tr. at 15.

      B.  <u>Subjects of Testimony or Evidence</u>

Defendant also seeks to bar Plaintiff from asking questions or presenting testimony about (1) any arrests or convictions of Defendant Gutierrez and (2) marijuana use of other AutoZone employees. Each is addressed in turn.

      1.  *Evidence of Arrests or Convictions of a Witness*

Defendants seek to bar Plaintiff from asking questions or introducing evidence related to prior arrests or convictions of Defendant Gutierrez, a potential witness at trial. Defendant asserts that such evidence or testimony is inadmissible under Fed. R. Evid. 608 and 609 as improper character evidence. It is well settled that evidence of an *arrest* is inadmissible character evidence. See Fed. R. Evid. 608; *Industrial Hard Chrome, LTD, IHC v. Hetran, Inc.*, 92 F.

Supp. 2d 786, 789 (N.D. Ill. 2000) (granting a motion *in limine* and excluding proposed evidence of an arrest because such evidence "does not go toward a [witness's] credibility but is, in fact, inadmissible character evidence"). Under Fed. R. Evid. 609(a)(2), evidence of a *conviction* is admissible as character evidence *only* if the proponent shows that that the conviction related to a crime that requires proof or admission of an act of dishonesty or false statement by the witness. Even then, if the conviction that qualifies for admission under Fed. R. Evid. 609(a)(2) occurred more than 10 years ago, the proponent of such evidence must establish its probative value before the Court determines if the evidence of the conviction is admissible under Fed. R. Evid. 609(b). Here, Plaintiff has made no such showing. Therefore, Plaintiff is barred from introducing any evidence about prior arrests related to Defendant Gutierrez under Fed. R. Evid. 404 and 608. Plaintiff is also barred from introducing any evidence about convictions of Defendant Gutierrez absent laying a foundation for admissibility under Fed. R. Evid. 609. If Plaintiff believes he has the basis for laying such a foundation, the issue should first be raised outside the presence of the jury.

### 2. *Evidence of Marijuana Use by Witnesses*

Defendants contend that Plaintiff will seek to elicit testimony or introduce other evidence regarding alleged personal use of marijuana by potential witness Enrique Alejandre, Plaintiff's former supervisor, or by any other defense witness. The Court fails to see the relevance of this type of testimony or evidence, including whether AutoZone knew of its employees alleged use of marijuana, under Fed. R. Evid. 401. This type of testimony or evidence fails to support the elements required to prove Plaintiff's claims in this case and is otherwise inadmissible character evidence under Fed. R. Evid. 404(a). Additionally, unlike Plaintiff, Defendants have not raised a claim or defense which puts evidence of that nature at issue. Finally, in his response to

Defendants' motion *in limine*, Plaintiff failed to provide a reason why such evidence or testimony would be admissible for some purpose other than character evidence, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Plaintiff therefore has waived any such argument and is barred from introducing testimony or other evidence regarding the alleged personal use of marijuana by any of Defendants' witnesses in this case.

## II. Defendants' Second Motion *in Limine*

Defendants raise three final issues regarding Plaintiff's proposed exhibits for trial in their second motion *in limine*. Each is addressed in turn.

### A. Proposed Plaintiff's Exhibit 7(d)

Defendants seek to exclude a report from the Illinois Department of Human Services, Office of Rehabilitation Services, proposed by Plaintiff as Exhibit 7(d). Defendants contend that this report has not been properly authenticated under Fed. R. Evid. 901 nor can it be under Fed. R. Evid. 902. Defendants further argue that the report should be excluded because it is inadmissible hearsay under Fed. R. Evid. 801 and does not fall within the business records exception under Fed. R. Evid. 803(6). In his letter dated March 28, 2008, Plaintiff indicated that he was seeking certification of Exhibits 7(a), 7(c), 7(e), and 7(f) to resolve the authenticity issues, but not Exhibit 7(d). Plaintiff has offered no method by which he can authenticate Exhibit 7(d) to verify that the document is what Plaintiff purports it to be and the Court cannot foresee any witness which can cure this problem. Thus, Plaintiff's Exhibit 7(d) is excluded and Plaintiff is barred from using this exhibit at trial.

B.  Internet Postings

Plaintiff proposes as Exhibit 9(d) several print-outs of Internet job postings with descriptions of the duties of a Commercial Specialist at AutoZone.  Defendants seek to exclude this exclude on grounds that it is irrelevant under Fed. R. Evid. 401 and inadmissible hearsay under Fed. R. Evid. 801.  Specifically Defendants state that since Plaintiff never held the position of Commercial Specialist at AutoZone, these job postings are irrelevant.  In response, Plaintiff argues that the records are relevant and admissible under the business record exception to the hearsay rule set forth at Fed. R. Evid. 803(6).  Plaintiff also contends that these postings are exempt from the hearsay rule under Fed. R. Evid. 801(d)(2) as a party admission to the extent that the job description in the posting differed from Plaintiff's duties when he filled in as a commercial specialist at AutoZone.

As an initial matter, the Court disagrees with Defendants that these postings are irrelevant under Fed. R. Evid. 401.  Plaintiff contends AutoZone promoted him to the position of assistant Commercial Specialist during his time at AutoZone in addition to his duties as a Commercial Driver, and contends that he performed the duties of a Commercial Specialist while acting as the assistant.  Descriptions of the duties of a Commercial Specialist therefore could relevant to Plaintiff's position at AutoZone and his claims under Title VII.

The Court raised at the pre-trial conference its concern that Plaintiff may be unable to authenticate the Internet postings proposed at Exhibit 9(d) prior to moving for their admission into evidence.  See PTC Tr. at 19.  At the Pre-Trial Conference, Defendants indicated that they may be willing to stipulate to the authenticity of the Internet postings proposed as Plaintiff's Exhibit 9(d).  See PTC Tr. at 19-20.  The Court therefore denies Defendants' motion with respect to Exhibit 9(d) and reserves its ruling on Defendants' hearsay objections related to the

documents proposed as Plaintiff's Ex. 9(d), at least until it has been advised as to whether the parties have stipulated to the authenticity of the documents included in this exhibit.

      C.   Letters Regarding Plaintiff's Job Inquiries and His Student Account History

Plaintiff includes a number of letters and postcards related to inquiries he made regarding job opportunities following his termination from AutoZone as proposed Plaintiff's Exhibit 12. Also included is a student-account history from Olivet Nazarene University. See Pl. Ex. 12(h). Defendants contend that Plaintiff lists no witnesses who can authenticate or lay a proper foundation for the documents proposed for this exhibit. Defendants also contend that the documents are inadmissible hearsay under Fed. R. Evid. 801 and do not fall within the hearsay exception for business records set forth at Fed. R. Evid. 803(6). The Court agrees that these documents are inadmissible. Even absent the authentication issue, Plaintiff fails to list any witnesses who could lay the foundation to overcome the hearsay objection as to these documents. A witness would be required for each individual letter, postcard, or account history to lay the foundation for admissibility by establishing that these types of documents are records kept in the ordinary course of that business's activities. See Pl. Ex. 12(a)-12(h). Plaintiff has not listed a single witness who can testify to lay the foundation that these documents fall within the permissible bounds of the business record exception to the hearsay prohibition, nor can Plaintiff overcome these hearsay obstacles with his own testimony. Therefore, Exhibit 12 is inadmissible in its entirety and Defendants' motion *in limine* is granted with respect to that exhibit. As noted at the Pre-Trial Conference, Plaintiff of course is free to testify regarding his efforts to secure work after his termination from AutoZone at trial.

### III. Plaintiff's Motion *in Limine*

In his motion *in limine*, Plaintiff seeks to exclude more than fifty of Defendants' exhibits and also seeks to bar Defendants at trial from raising questions or offering evidence regarding certain subjects related to Plaintiff's alleged conduct.

### A. Exhibits Offered by Defendants

#### 1. *Defendants' Exhibits 2, 3, 13, 40, 42*

Plaintiff seeks to exclude several exhibits proposed by Defendants on the basis that they where never disclosed to Plaintiff. Defendants' proposed Exhibits 2, 3, 13, 40, and 42 all are Bates labeled. Defendants represent that these documents were produced to Plaintiff during the course of discovery. Defendants also represent that Plaintiff never raised any objection to Defendants for production errors such as missing pages. Plaintiff offers no concrete support for his assertions in the face of Defendants' representations. On these bases, the Court will disregard any claims regarding a lack of disclosure or production. Accordingly Plaintiff's motion to exclude Exhibits 2, 40, and 42 is denied.

Plaintiff seeks to exclude proposed Defendant's Exhibit 3 and 13 on additional grounds. Exhibit 3 is a personnel information form that Defendants assert was completed by Plaintiff when he started work with Defendant AutoZone. Plaintiff contends that this document is no longer relevant because Defendants' "only purpose" for this document is "to show that Mr. El Bakly is of Arab and Muslim background" and then contends this fact is not in dispute between the parties. Plaintiff's Reply, DE 99 at 2. Defendants respond that proposed Exhibit 3 is a document completed by Plaintiff upon his acceptance of employment at AutoZone that identifies his race, but not his religion or natural origin, and Defendants assert that this document is relevant to whether AutoZone managers knew of Plaintiff's national origin or status. Def. Opp.

(DE 98) at 2.  At this stage, the Court finds that Defendant's proposed Exhibit 3 appears relevant to Defendants' knowledge of Plaintiff's religion and national origin under Fed. R. Evid. 401. Therefore, Plaintiff's motion to exclude Exhibit 3 on relevancy grounds is denied.

Defendant's proposed Exhibit 13 is a corrective action review of Plaintiff dated November 8, 2002.  Plaintiff asserts that Exhibit 13 should be excluded because it is irrelevant to his claims and Defendants' defense.  Plaintiff also appears to claim the document should be excluded as inadmissible hearsay.  Defendants respond that this corrective action review is relevant to Defendants' reasons for the eventual termination of Plaintiff.  At this stage, the Court finds that exclusion of Exhibit 13 on the basis of relevance is premature.  Plaintiff's prior history of corrective actions at AutoZone could be relevant to his termination.  The Court also finds that a determination that the document is inadmissible hearsay at this time is premature.  Defendants will be given the opportunity to lay the foundation for the admission of this document and to demonstrate that this record falls with the business record exception to the hearsay rule. Plaintiff's motion to exclude Exhibit 13 is therefore denied at this time and the Court reserves its ruling on Exhibit 13's admissibility, but Plaintiff is free to renew his objections at trial.

In sum, the Court finds that under the operative language of the proposed Pre-Trial Order, Exhibits 2, 3, 40, and 42 will be received into evidence.  The Court reserves its ruling on the admissibility of Exhibit 13.

### 2.  *Defendants' Exhibit 47*

In his motion, Plaintiff also seeks to exclude a confidential worksheet regarding Plaintiff dated June 3, 2004, proposed by Defendants as Exhibit 47.  However, after a close examination, the Court notes that Defendant's Exhibit 47 is the exact same document offered by Plaintiff as Plaintiff's Exhibit 10(b), and Defendant did not object to this exhibit's receipt into evidence.

Plaintiff's motion with respect this exhibit is therefore denied and Defendant's Exhibit 47, like Plaintiff's Exhibit 10(b), will be received into evidence.

       3. *Defendants' Exhibits 63-66 and 110 related to potential witness Daniel Probo*

Plaintiff seeks to exclude Exhibits 63-66 and Exhibit 110 proposed by Defendants, all of which are related to Daniel Probo, a former AutoZone employee who is identified on Plaintiff's proposed witness list. Plaintiff argues that these exhibits are irrelevant under Fed. R. Evid. 401 and 402, and that the exhibits are inadmissible hearsay. All of these exhibits appear to be records kept by AutoZone in a personnel file related to Daniel Probo. Exhibits 63-66 relate to an investigation of Mr. Probo's conduct while employed at AutoZone and Exhibit 110 is a signed acknowledgement of AutoZone's employee handbook by Mr. Probo. Defendants assert these exhibits are relevant to Mr. Probo's credibility and potential bias against Defendant Autozone.

The Court finds that if Mr. Probo is called as a witness, all of these documents are likely to be relevant to the extent that questions are raised about Mr. Probo's employment with and relationship to AutoZone. As Defendants correctly point out, although these documents are not helpful to Plaintiff's case-in-chief or Defendants' defenses to those claims, they are relevant to potential bias of Mr. Probo against AutoZone and therefore may affect his credibility before the jury. Bias is not a collateral issue. See *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996).

However, with respect to Exhibits 63-65, the Court finds that they are inadmissible hearsay and therefore should be excluded. Exhibits 63-65 consist of a fax cover sheet and two statements written by AutoZone employees made during an investigation of Mr. Probo. The handwritten statements are made by out-of-court declarants as part of an internal investigation at Defendant's AutoZone's store. These statements do not appear to be records of the type

normally kept in the ordinary course of AutoZone's business operations. Instead, these statements relay specific details about the instances of alleged misconduct by Mr. Probo. The witnesses who submitted the statements, Brian Quintero and Pete Martinez, are not listed as witnesses for trial and thus the reliability of their statements cannot be tested upon cross-examination. Moreover, even if the investigative statements could be shown to be business records, the Quintero and Martinez statements about what Probo allegedly said still would be hearsay within those business reports.

However, Exhibit 66 appears to be a statement from Mr. Probo himself related to the same incident that appears to be highly relevant on the matter of Mr. Probo's credibility and potential bias and at a minimum may be usable for impeachment, even if it would not be admissible as substantive evidence.[1] Exhibit 110, an employee handbook acknowledgment signed by Daniel Probo, may fall with the business record exception to the hearsay rule. The Court will reserve a ruling on Exhibit 66 and 110 until Mr. Probo's status as a witness is determined before the trial. Therefore, Plaintiff's motion to exclude to Defendants' proposed Exhibits 63-65 is granted, but denied with respect to Exhibits 66 and 110. The Court reserves its ruling on Exhibits 66 and 110. Plaintiff is free to raise objections regarding the admissibility of Exhibits 66 and 110 if Defendant is unable to lay the proper foundation for the admissibility of these records at trial.

### 4. *Defendants' Exhibits 67-119*

Plaintiff seeks to exclude Exhibits 67-119 on the basis that they are irrelevant under Fed. R. Evid. 401 and 402, and inadmissible hearsay under Fed. R. Evid. 801. Plaintiff asserts that all of these exhibits relate to AutoZone's sexual harassment policy. But Defendants' Exhibits 67-

---

[1] AutoZone also notes that in Exhibit 66, Mr. Probo admits making the comments ascribed to him by Mr. Quintero and Mr. Martinez in Exhibits 64 and 65. Thus, Exhibits 64 and 65 also could be said to be cumulative.

119 actually appear to consist of three different types of documents: (1) diversity mission statements (Def. Exs. 67-76, 81-82, and 93-95) and sexual harassment acknowledgements (Def. Exs. 77-80, 83-92, 96) signed by employees at the AutoZone store (No. 2575) where Mr. El-Bakly was employed in February of 2004, (2) diversity mission statements, sexual harassment acknowledgements, employee handbook acknowledgements, and corrective action reviews related to former AutoZone employees, including Anderson Cruz, Adrian Villaneuvea, and Daniel Hernandez, whom Plaintiff initially listed as potential witnesses (Def. Exs. 99-109, 111-119), and (3) two weekly work schedule print-outs related to Plaintiff El-Bakly (Def. Exs. 97-98). Exhibit 110 relates to Daniel Probo, and the Court already addressed Plaintiff's motion *in limine* with respect to this exhibit. See *infra* at III(A)(3). Defendants assert that the majority of these exhibits relate to a refresher course on AutoZone's harassment and diversity policies and procedures and are relevant to Defendants' response Plaintiff's allegations of harassment and "directly bear on its ability present evidence pertaining to its affirmative defense that it has policies and procedures designed to both prevent and promptly correct harassment." Defendants further assert that these exhibits are admissible under Fed. R. Evid. 803(6), the business record exception to the hearsay rule.

The Court first addresses Defendants' Exhibits 99-109 and 111-119. Most, if not all, of these documents relate to former employees that Plaintiff initially listed as potential witnesses in this case, but subsequently has withdrawn. Defendants indicated in their opposition to Plaintiff's motion *in limine* that theses exhibits were included as potential impeachment documents and evidence of bias. To the extent that the witnesses to whom Exhibits 99-109 and 111-119 relate have been withdrawn and will not be called at trial, those exhibits obviously are irrelevant and therefore excluded.

The Court next addresses Defendants' Exhibits 97-98. Neither Plaintiff nor Defendants specifically reference these exhibits in their briefing. Exhibits 97 and 98 appear to be AutoZone records reflecting some sort of weekly schedule for Plaintiff El-Bakly. The Court declines to exclude these documents at this time and reserves a ruling on their admissibility pending Defendants' opportunity to establish the foundation and relevance of these documents.

Finally, the Court considers Exhibits 67-96, documents which Defendants assert are signed acknowledgments of the diversity mission statement (Def. Exs. 67-76, 81-82, 93-95) and sexual harassment policy (Def. Exs. 77-80, 83-92, 96) by all of the employees at the AutoZone store where Plaintiff was employed. Defendants contend these documents were completed following a training session on discrimination and AutoZone diversity policies and that they are relevant to an affirmative defense against Plaintiff's harassment claim, namely that AutoZone has policies and procedures in place designed to both prevent and promptly correct harassment.

Plaintiff asserts a harassment claim based on a theory of hostile work environment, brought against the three individual defendants and corporate defendant AutoZone. See Amended Complaint (DE 7) ¶¶ 30-32. Plaintiff apparently claims that all three individual defendants were his supervisors at the time of the alleged harassment (which as discussed below, affects the standard of employer liability). In order to establish a hostile work environment claim under Title VII, Plaintiff must show that (1) he was subjected to unwelcome harassment, (2) the harassment was based upon an identified protected status (here his national origin and religion), (3) the harassment was severe and pervasive enough to create a hostile and abusive working environment, and (4) there is a basis for employer liability. See *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.2d 854, 863 (7th Cir. 2005).

The standards for employer liability differ depending on whether the alleged harassment was perpetrated by supervisors or co-workers. See *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.2d 1021, 1029 (7th Cir. 2004). Employers essentially are strictly liable for harassment inflicted by supervisors, subject to an affirmative defense when the harassment does not result in a "tangible employment action." *Id.* (citations omitted). If a plaintiff does not suffer "tangible employment action" as a result of the alleged harassment by a supervisor, the employer may raise an affirmative defense comprised of two elements: (1) that the employer exercised reasonable care to prevent and correctly promptly the harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 n.4 (7th Cir. 2000) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Given the law in this area, the Court agrees that the signed diversity mission statements are relevant to a potential affirmative defense for Defendant AutoZone, because they might support a finding that Defendant AutoZone exercised reasonable care to prevent and correct promptly the harassing behavior. See *Mason*, 233 F.3d at 1043 n.4. The Court will reserve its ruling on the admissibility of these documents and will permit Defendants to lay to foundation that these records fall within the business records hearsay exception pursuant to Fed. R. Evid. 803(6), unless the parties' so stipulate. The Court reserves its ruling on whether the exhibits related to AutoZone's sexual harassment policy are relevant under Fed. R. Evid. 401, pending the presentation of the evidence and the decision by Defendants whether to seek to use those exhibits for any purpose at trial.

In sum, the Court reserves its ruling on the admissibility of Defendants' Exhibits 67-76, 81-82, and 93-95 (diversity mission statements), Exhibits 77-80, 83-92 and 96 (sexual harassment policy acknowledgements), and Exhibits 97-98 (weekly schedules). To the extent that Defendants' Exhibits 99-109 and 111-119 relate to former employees who will not be called as witnesses, those exhibits are excluded.

B.  Subjects of Testimony or Evidence regarding Plaintiff's Conduct

Plaintiff moves *in limine* to prohibit Defendants from introducing evidence, including testimony, regarding (1) allegations that Plaintiff used illegal drugs and (2) allegations that Plaintiff used religious slurs or other derogatory statements against, in particular, people of the Jewish faith and that Plaintiff spoke approvingly of Nazis. At the Pre-Trial Conference held on April 2, 2008, the Court requested supplemental briefing on this motion, specifically in regard to the second category of allegations, to ensure that Plaintiff had an opportunity to direct the Court to the strongest authorities in support of Plaintiff's position. In ruling on the motion, the Court therefore has the benefit of both parties' supplemental memoranda.

1.  *Evidence of Drug Use*

Plaintiff seeks to bar Defendants from asking any questions related to or introducing any evidence about drug use by Plaintiff as improper character evidence under Fed. R. Evid. 404. In his most recent submission to this Court, Plaintiff alleges that drug use is essentially just evidence of "prior bad acts." Defendants respond that they are not seeking to introduce improper character evidence, but rather are seeking (1) to defend AutoZone's termination of Plaintiff in the face of Plaintiff's allegations that AutoZone's proffered for termination was pretextual and (2) to introduce evidence of drug use as a defense to Plaintiff's defamation *per se* claim.

With respect to the latter, Plaintiff alleges that Defendant Ramos called Plaintiff an illegal drug user and that Defendant Harris stated, in front of all of the AutoZone employees, that "Moustafa smoked marijuana in the truck." Amended Complaint ¶ 40. Plaintiff therefore has placed his drug use (or the falsity thereof) directly at issue in this case. Truth is a complete defense to a defamation claim. See *Harrison v. Chicago Sun-Times*, *Inc.*, 341 Ill. App. 3d 555 (1st Dist. 2003). Defendants have the burden of establishing the substantial truth of the alleged defamatory statement, which is that the "gist" or the "sting" of each statement is true. *Id.*; see also *Duvall v. Tyco Adhesives GP Holdings, Inc.*, 2007 WL 2075863 (N. D. Ill. July 12, 2007).

Plaintiff offers no authority to the contrary. Indeed, one of the cases addressed in Plaintiff's supplemental memorandum, *Moore v. Principi*, 2002 U.S. Dist. LEXIS 23772 (N.D. Ill. Dec. 10, 2002), illustrates precisely why Plaintiff's position fails. As Judge Kennelly explained, evidence that is "irrelevant" and "collateral" may be excluded, but evidence that relates directly to an issue in the case – in *Moore*, whether certain alleged behavior by the plaintiff "may have factored into the termination decision" – is generally admissible. *Id.* at *17-*18. Defendants therefore will be permitted to introduce, in support of their defense of the truthfulness of the statements at issue, evidence that Plaintiff was an illegal drug user and that he smoked marijuana in the truck, because Plaintiff has put those matters at issue in bringing his defamation claim.

As *Moore* also suggests, Defendants also are correct that they are permitted to introduce evidence to rebut Plaintiff's claim that his firing was pretextual, including evidence related to their defense that Plaintiff was terminated based upon his statements allegedly made to other AutoZone employees regarding drug use and that marijuana was found in his truck. Given Plaintiff's claim that AutoZone's reasons for firing him were just a pretext for his unlawful

termination, AutoZone as the employer is permitted to provide evidence in support of its stated reason. The trier of fact should look to whether the employer has provided the honest reasons for its actions, not whether the reasons were unwise or correct. See *Johnson v. Siemens Bldg. Technologies*, 2007 WL 1017850 at *19 (N.D. Ill. March 30, 2007) (quoting *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006)) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the actions of which the plaintiff complains is correct, but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground"). In the face of Plaintiff's argument that his termination was pretextual, evidence related to Plaintiff's alleged drug use or alleged statements made by Plaintiff regarding illegal drug use is highly relevant to Defendant's assertion that the real reason for Plaintiff's termination was not based upon his religion or natural origin, but upon their loss of confidence in him due to the alleged drug use and Plaintiff's alleged statements about drug use.

Plaintiff's motion to exclude evidence regarding his alleged drug use or statements about his alleged drug use is therefore denied. [2]

### 2. *Evidence of Plaintiff's Comments Regarding Other Religions*

Plaintiff seeks to prohibit Defendants from asking any questions or introducing any evidence suggesting that Plaintiff has made comments about Nazis, swastikas, Jewish people, or the Jewish religion as improper character evidence under Fed. R. Evid. 404. Plaintiff also asserts

---

[2]     In his supplemental brief (DE 110), Plaintiff suggests in the alternative that the jury be given a limiting instruction explaining the purposes for which the evidence at issue (here, testimony related to Plaintiff's alleged drug use and his alleged statements regarding, *inter alia*, the Jewish religion and Nazism) can be considered. See, *e.g.*, *Berry v. Deloney*, 28 F.3d 604, 606 n.1 (7th Cir. 1994); *McCleland v. Montgomery Ward & Co.*, 1995 U.S. Dist. LEXIS 14012, at *7 (N.D. Ill. Sept. 21, 1995) ("To avoid any potential prejudice, before trial plaintiffs may submit a cautionary jury instruction that the evidence plaintiffs seek to exclude may only be considered for limited purposes"). The Court will discuss Plaintiff's alternative proposal with counsel at the final pre-trial conference.

that such testimony or evidence is highly prejudicial under Fed. R. Evid. 403. Defendants respond that any evidence introduced on this subject is relevant to Plaintiff's claim under Title VII that he was subjected to a hostile work environment. Plaintiff alleges in Count III of his Amended Complaint, as one of his discrimination claims on the basis of his religion and national origin, that he was subjected to an abusive work environment that was pervasive and severe and altered the conditions of his work. Amended Complaint ¶¶ 30-32.

As noted above, in order to establish a hostile work environment claim under Title VII, Plaintiff must show that "(1) he was subjected to unwelcome harassment, (2) the harassment was based upon an identified protected status [here his national origin and religion], (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.2d 854, 863 (7th Cir. 2005). A plaintiff must prove that the alleged harassment was "both subjectively and objectively so severe or pervasive as to alter the conditions of [] employment and create an abusive working environment." See *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004). In other words, a plaintiff must show that the work environment was offensive both to the reasonable person—the objective standard—and to the plaintiff himself—the subjective standard. See *Harris v. Forklift Systems*, *Inc.*, 510 U.S. 17, 22 (1993). Upon a finding of a hostile work environment an employer is liable if either (1) the plaintiff's supervisor created the hostile work environment, supporting what essentially amounts a finding of strict liability of the employer, or (2) under a different standard, a co-worker created the hostile work environment and the employer was "negligent either in discovering or remedying the harassment." *Mason v. S. Ill. Univ.*, 233 F.2d

1036, 1043 (7th Cir. 2000) (citations omitted); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Parkins v. Civil Constructors of Ill. Inc.¸* 163 F.3d 1027, 1032 (7th Cir. 1998).

*Harris* further teaches that in order to determine whether a work environment is objectively hostile and abusive, one looks to the totality of the circumstances. 510 U.S. at 23; see also *Wyninger*, 361 F.3d at 975-976 ("In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment reasonably interferes with an employee's work."). Evidence that a plaintiff has engaged in behavior that runs contrary to his or her assertions that the work environment was hostile thus may be considered. See *Reed v. Shepard*, 939 F.2d 484, 486-487 (7th Cir. 1991) (noting that plaintiff's "welcome of sexual hijinx" was fatal to her sexual harassment claim under Title VII).

*Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68-69 (1986), establishes that unwelcomeness is at the center of a Title VII hostile environment claim and that a plaintiff's own conduct may be relevant to the inquiry. As the Seventh Circuit has explained, in considering a hostile environment claim, "[t]he first question is whether a reasonable jury could find that the allegedly harassing speech was unwelcome." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). The court then observed that "[w]hether words or conduct were unwelcome presents a difficult question of proof turning largely on credibility determinations committed to the factfinder." *Id*. In *Hrobowski*, the defendant argued that "any of the allegedly hostile words that [plaintiff] encountered actually were welcome because, as [plaintiff] admitted, he too made racially oriented jokes and used words such as 'spic' and 'nigger' in the workplace." *Id*. The Seventh Circuit has stated that "'[w]elcome sexual harassment' is an oxymoron" and

that when an employee "demonstrates by word or deed that the 'harassment' is welcome . . . it is not harassment." *Carr v. Allison Gas Turbine Division, General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994). But all of these issues are for the finder of fact – in this case, a jury. Thus, while it is true that the fact "that the plaintiff himself used racist language does not lead inexorably to the conclusion that he welcomed the racial insensitivity of others" (*Hrobowski*, 358 F.3d at 476), there is no suggestion in the Seventh Circuit's case law that the factfinder should be shielded from having both sides of the credibility battle present their relevant evidence on the "unwelcomeness" issue, for that evidence is part of the totality of the circumstances that the factfinder must evaluate in determining a hostile environment claim.

Defendants indicate they will seek to introduce evidence of several statements made by Plaintiff to other workers at AutoZone regarding the Jewish religion. Defendants, in their most recent submission to the Court, contend these statements are relevant for two purposes: (1) to show that Plaintiff was not subjectively offended because Plaintiff himself engaged in harassing conduct, including disparaging comments about other religions (thus related to an element of Plaintiff's hostile work environment claim) and (2) by claiming damages based on what AutoZone employees allegedly said to him in discussions at work, thus "opening the door" to what was discussed. Because Plaintiff has brought a claim of hostile work environment against Defendant AutoZone, the Court concludes that Defendants may introduce evidence that Plaintiff made derogatory statements about the Jewish religion and/or Nazism. Such evidence is relevant to both the subjective and objective elements that Plaintiff must prove in order to establish that the harassment at issue amounted to a hostile work environment. The potentially prejudicial effect of such testimony is not outweighed by the probative value of the Plaintiff's own conduct in the face of the alleged harassment because it relates to the totality of circumstances which the

trier of fact must consider in resolving Plaintiff's hostile environment claim.  Accordingly, the testimony will not be barred under Fed. R. Evid. 403.  See *McCleland*, 1995 U.S. Dist. LEXIS 14012, at *6.  The Court will consider a limiting instruction regarding the use of such evidence in order to inform the jury of the purpose for which such evidence may be considered, but Plaintiff's motion to exclude such testimony in its entirety is denied.

        C.   The Admissibility of Plaintiff's Exhibit 13

The Court is puzzled over the argument concerning Plaintiff's proposed Exhibit 13.  In their sur-reply to Plaintiff's motion *in limine*, Defendants indicate that they have no objection to that exhibit.  See Def. Sur-Reply (DE 102) at 5.  Therefore, Plaintiff's Exhibit 13 is received into evidence.  Plaintiff moved for sanctions based upon allegations that Defendants failed to provide that document in discovery.  Defendants respond that Plaintiff never requested a conference on the issue, as required by Fed. R. Civ. P. 37(a)(2)(B) and this Court's Local Rule 37.2 prior to seeking sanctions in connection with a discovery dispute.  Moreover, Plaintiff fails to offer any evidence to substantiate his allegations that Defendants or their counsel actively took steps to prevent disclosure or production of this document.  Plaintiff's motion for sanctions is therefore denied.

**IV.**    **The Remaining Exhibits**

On both sides, several objections to exhibits which were not raised in the parties' respective motions *in limine* still remain (as an example, the Court notes that Defendants raise objections to Plaintiff's Exhibit 4 in the proposed Pre-Trial Order but did not address those objections in their motions *in limine*).  Consistent with the operative language in the proposed Pre-Trial Order, those exhibits will not be deemed admitted and any remaining objections will be addressed when the introducing party proposes to submit the exhibit into evidence before the

jury. Any exhibits to which there were no objections will, consistent with the operative language in the proposed Pre-Trial Order, be deemed admitted and received into evidence.

## V.    Conclusion

Consistent with the ruling above, the remainder of Defendants' motion *in limine* (DE 83) is GRANTED in part and DENIED in part, Defendants' second motion *in limine* (DE 89) is GRANTED in part and DENIED in part, and Plaintiff's motion *in limine* (DE 93) is GRANTED in part and DENIED in part.


Dated:  April 16, 2008                        _____
                                              Robert M. Dow, Jr.
                                              United States District Judge