UNITED STATES DISCRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOUSTAFA EL-BAKLY | ) | |
| | ) | |
| Plaintiff, | ) | No. 04CV 02767 |
| v. | ) | |
| | ) | Judge R. Dow |
| AUTOZONE, Inc., a Nevada | ) | |
| Corporation, Rob Harris, | ) | |
| Juan Gutierrez, and | ) | |
| Chris Ramos | ) | |
| | ) | |
| Defendants, | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AND CROSS-MOTION FOR JUDGMENT**

Now comes the Plaintiff, Moustafa El Bakly, through counsel and, pursuant to Federal Rule of Civ. P. 50, hereby submits his response and memorandum in support of his Response to Defendants' Motion For Judgment as a Matter of Law and his cross-motion and memorandum in support of his Motion for Judgment as a Matter of Law.

I.  Background

A four day jury trial was held beginning on April 21, 2008 on five claims brought by former Autozone employee Moustafa El Bakly. Mr. El Bakly sued Autozone claiming that he had been subjected to national origin and religious discrimination in the form of disparate treatment, harassment and hostile work environment, and further sued three individual defendants, Chris Ramos, Juan Gutierrez and Rob Harris, who were all his managers at Autozone, for infliction of emotional distress and defamation.

Evidence presented at trial by the Plaintiff showed that on or about June 2003, manager

Chris Ramos made comments that were offensive to Mr. El Bakly's religion or national origin in the presence of both Store Manager Rob Harris and District Manager Jose Gomez. Plaintiff's Exhibit 11d at p. D-00122, Plaintiff's Exhibit 11c at p. D-00120, and testimony of Mr. Jose Jimenez and Mr. Moustafa El Bakly and Def. witness Ricardo Maldonado. Both Rob Harris and Jose Gomez held positions charged with investigating such problems within the Autozone chain of command. Def. Exhibit 53 at p. D-00153 and D-00155 (Autozone Stores Handbook) and testimony of Mr. Jose Jimenez. The evidence also showed that the conduct by Ramos and other employees persisted through at least February 2004, nine months later and with frequency as regular as newspaper headlines of the Iraq War or Middle Eastern events during this point in time. Plaintiff's Exhibit 11c at p. D-00120, and testimony of Mr. Jose Jimenez and Mr. Moustafa El Bakly and Def. Witness Ricardo Maldonado. In addition, it was uncontested at trial that during the contemporaneous time period of September 2003 through June 2004, the store management subjected Mr. El Bakly to the following employment actions: 1. a series corrective actions including a write up by Enrique Alejandre (Plaintiff Exhibit 8(d), being sent home without pay before his regularly scheduled time (Testimony of Moustafa El Bakly, Juan Gutierrez, Chris Ramos, Enrique Alejandre, and Jose Gomez and Plaintiff's Exhibit 9(b) at p. D-000364; 2. a change in his job duties or responsibilities to that of driver (Plaintiff Exhibit 8(d) and testimony of Moustafa El Bakly, Rob Harris, Sheri Leonard Brinker, Jose Jimenez, Alejandro Flores 3. a change in his title, uniform and formal categorization to that of a lower non-management position (Def. Exhibit 53 at p. D-0010 (Shirt classifications); Plaintiff Exhibit 8(d); and testimony of Moustafa El Bakly, Rob Harris, Sheri Leonard Brinker, Jose Jimenez, Alejandro Flores); 4. accusations and reprimanded for alleged involvement with illegal drugs; 5. individualized monitoring for performance. 6. termination. Jury instruction 14, the jury

2

instruction on the parties' burdens and the civil rights claims, failed to include various of these actions. That same jury instruction also explained the Defendant Autozone's *Ellerth/Faragher* affirmative defense but <u>failed to state that no affirmative defense is available to Mr. El Bakly's civil rights claims when a supervisor's harassment culminates in a tangible employment action</u>, such as a discharge, demotion, or undesirable assignment. *Gentry v. Export Packaging Co.*, 238 F.3d 842, 846 (7th Cir.2001) (*quoting Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742 at 765.

In this case, the evidence was clear and undisputed that the discrimination and hostile work environment continued through a period of at least February 2004, during which time it also evolved into a series of tangible and adverse employment actions as described above (reduction in force, being sent home early, reprimands, accusations), and ultimately culminated in termination in June 2004.

After approximately two and a half hours of deliberation, the jury found that Autozone was liable on the hostile work environment claim for harassment by his co-workers based on his religion and/or national origin. The verdict form shows that the jury found for the Autozone and each of the individual Defendants on all other counts. Per the jury instructions, in order to find for the Plaintiff on his hostile work environment count, it had to have found that: Mr. El Bakly was subjected to harassment and did not welcome such conduct and felt that it made his work environment hostile and abusive, that it was unreasonably severe and pervasive and occurred because of his religion or national origin, that Defendant Autozone knew or should have known about the conduct and did not take reasonable steps to correct the situation or prevent the harassment from occurring. In order to award punitive damages for this claim, it had to have found that managerial employees with Autozone acted within the scope of their employment and in reckless disregard of the Plaintiff's civil rights. The punitive damages instruction further

3

directed the jurors that punitive damages, if awarded, should be in an amount sufficient to fulfill the purposes of punishing a defendant for his conduct and serving as an example or warning to Defendant and others not to engage in similar conduct in the future.

During the course of deliberations, the jury communicated one question to the Court: whether a jury may award costs as punitive damages. The Court's response referred the jury to Jury Instruction 29 and 30 and told them that they had to decide on a set amount in accordance with that instruction.

II. Standard

Both an appellate and a trial court's inquiry in post-trial motions for judgment as a matter of law are limited to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support he verdict when viewed in the light most favorable to the party against whom the motion is directed . . . In other words [courts] are limited to assessing whether no rational jury could have found for the plaintiff." *Mathur v. Board of Trustees*, 207 F.3d 938, 941 (7th Cir. 2000), *David v. Caterpillar, Inc.,* 324 F.3d 851 (7th Cir. 2003). In applying this standard, the court evaluates whether a jury reasonably could have arrived at the conclusions it did, in light of the benefit of the trial transcript and admitted exhibits as well. *See Byrd v. Illinois Department of Public Health and Whitaker*, 423 F.2d 696, 701 (7th Cir. 2005); Tart v. *Illinois Power Co.,* 366 F.3d 461, 472 (7th Cir. 2004). Courts are limited to assessing whether no rational jury could have found for a given party. In doing so a court may not step in and substitute its view of the contested evidence for that of the jury's. *Mathur v. Board of Trustees*, 207 F.3d 938 (7th Cir. 2000).

III. No rational jury could have found for the Defendant on Counts 1 through 5 of the Plaintiff's case.

4

a. Disparate Impact and Hostile Work Environment Discrimination-Counts 1 and 3.

As a threshold matter, the Defendant argues that the Plaintiff failed to produce evidence to support just two of four elements of his discrimination claim: that he suffered an adverse employment action; and that similarly situated individuals not in his protected class received more favorable treatment. The Plaintiff will address each of those arguments in turn, and also present its argument as to how no rational jury could have found for the Defendant on each of the other elements in these counts.

<u>Adverse Employment Action.</u>

The Seventh Circuit has provided several examples of adverse employment actions, including "termination of employment, a demotion as evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (2002). There is no requirement that an adverse employment action be quantifiable in terms of pay or benefits. S*mart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996).

In this case, the Plaintiff testified that he his title was changed to a less distinguished title, and that his duties and responsibilities were significantly diminished. His title and duties changed from that of commercial specialist to driver. The testimony of Autozone managers and Defendants Rob Harris, Juan Gutierrez, and a series of company records such as Plaintiff's Exhibit 8(b) at page D-00014 confirm that Mr. El Bakly had been promoted to the level of a commercial specialist on or about April of 2003. In September 2003, those duties and that title changed to the lesser position of driver. This was proven not only through Mr. El Bakly's testimony, but also through the testimony of Defendant's own witnesses: Mr. Alejandro Flores, Ms. Sheri Brinker-Leonard, and Mr. Enrique Alejandre, both of whom testified that what Mr. El-

Bakly did was driver work. The Defendants' own documents, such as Defense Exhibit 20 (2/2004 Corrective Action Review), Plaintiff Exhibits 3 and 4 (Store Summary Reports and Autozone weekly schedule) all similarly reflect that Mr. El-Bakly was demoted to a "commercial driver." Autozone's very own Store handbook, Defendants Exhibit 53, page D-001160, differentiates management from non-management employees by the color of their uniform and Mr. Rob Harris and Mr. Enrique Alejandre, in addition to others, all testified that Mr. El Bakly was forced to change uniforms to the lowest level "red shirt" contemporaneously with his change in duties and responsibilities. In addition, it was uncontested that Mr. El Bakly was reprimanded in writing on 2/2004 and that Mr. El Bakly was ultimately terminated. Thus, the evidence overwhelmingly demonstrates that Mr. El Bakly suffered an employment action.

Similarly Situated Individuals

The Defendants, through Defense Witness Willie Bush and nearly every other witness admitted that Mr. El Bakly had been promoted to the position of "Commercial Specialist." The Documents all reflect that he was supposed to hold the position of commercial specialist. Plaintiff's Exhibits Exhibit 8(b) at page D-00014, Exh. 4 (Store Schedule), Exh 10 (Statement of Willie Bush). Many of the same exhibits, and Mr. Enrique Alejandre's own testimony also identify Mr. Enrique Alejandre, also holding the same position of Commercial Specialist. Mr. Enrique Alejandre was not subjected to the same adverse actions described above, namely a change in his duties and responsibilities, his uniform, reprimand, and termination. Therefore, the evidence demonstrates that Mr. El Bakly and Mr. Alejandre were similarly situated employees, and Mr. El Bakly was subjected to adverse employment action and Mr. Alejandre was not.

Defendant's Affirmative Defense

The jury instruction on Autozone's *Ellerth/Faragher* affirmative defense failed to state

6

that no affirmative defense is available to Mr. El Bakly's civil rights claims when a supervisor's harassment culminates in a tangible employment action, such as a discharge, demotion, or undesirable assignment. *Gentry v. Export Packaging Co.*, 238 F.3d 842, 846 (7th Cir.2001) (*quoting Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742 at 765. Furthermore, the Defendants arguments focus their analysis solely on the termination, and fail to address the series of adverse employment actions that occurred prior to the termination and which are listed above. Defendant did not articulate a legitimate, non-discriminatory reason for any one of these actions. This error notwithstanding, with respect to the termination, the Plaintiff introduced evidence in the form of the testimony of Mr. Rich Merchant and Mr. Willie Bush, both Human Resources Managers, that they relied solely on the statements and recommendations given by store management, simply executing a decision that was already predetermined. While Autozone claims that their ignorance of any discriminatory animus shields Autozone from liability, 7th Circuit case law is clear that an employer may not be conversant with the possible discriminatory or retaliatory animus that may have motivated the non-decisionmaker's recommendation, but may non the less be liable for that animus if it acts as a conduit for the non-decisionmaker's bias. *Byrd v. Ill. Dept. of Public Health,* 423 F.3d 696, 707 (7th Cir. 2005). Indeed, the Seventh Circuit has said that when an employer sets up several layers of pro-forma review but the operative decision is that of a subordinate with an illicit motive, it imputes to the company the discriminatory motive of the subordinate rather than the motive of the ignorant decision-maker. *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). Since the purported decision maker, Mr. Merchant, admitted that he did not conduct an independent investigation himself but merely relied on the statements of subordinates with possible retaliatory or discriminatory animus, by law that animus is imputed to the company. *Id.* Indeed, Mr.

7

Merchant himself admitted during testimony that he reviewed and considered the allegations of misconduct by Mr. El Bakly, but turned a blind eye to the statements which concerned any claims of discrimination.

Accordingly, no reasonable factfinder could find for the Defendant that it proved an affirmative defense for each of the adverse employment actions in this case, and no reasonable factfinder could find for the Defendant that there was no unlawful discrimination.


b. Retaliation – Count 2

Plaintiff can prove his retaliation claim in one of two ways, through direct or circumstantial evidence. First, he may "present direct evidence that [he] engaged in protected activity . . . and as a result suffered the adverse employment action of which [he] complains." *Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640, 643-44 (7th Cir. 2002). Second, if the plaintiff cannot prove direct evidence of retaliation, he can prevail under an adaptation of *McDonnell Douglas* by showing that after engaging in protected activity, he was subject to an adverse employment action even though she was performing his job in a satisfactory manner. Id. *See also Mathur* at 941.  The causal link between the protected expressions and the adverse actions may be demonstrated by the timing of the events, among other factors.  *George v. Walker*, 2007 U.S. Dist. LEXIS  53822, *12.

The judgment as a mater of law analysis presented in the *Mathur* case is directly applicable to the instant case. In *Mathur*, the appellate court considered whether, viewing the evidence in its totality, the plaintiff provided sufficient evidence that a rational jury could have concluded that retaliation was a determining factor in any adverse employment actions.

In this case, jury instruction number 16 was inadequate in three ways: first, it failed to

8

encompass various adverse employment actions that were proven at trial (and referenced above in section III. A. and again below in this memorandum) – the instruction was limited to two adverse actions—demotion and termination, 2. it failed to inform the jury that retaliation may be proven through either direct or circumstantial methods, 3. it failed to inform the jury that the timing of the events is one of many factors it may consider in determining whether these adverse actions were retaliatory.

It was uncontested and the parties even stipulated that Mr. El Bakly as performing his job in a satisfactory manner. Nevertheless, the Defendant offered absolutely no explanation for sending him home early without pay or issuing a written reprimand against him on 2/10/04 (Def. Exhibit 20/Plaintiff's Exhibit 8(d)). Therefore, there was no legitimate, non-discriminatory reason put forth for the Plaintiff to debunk as pretextual under *McDonnell Douglass* analysis.

Similarly, it was not contested that each of the adverse employment actions listed below took place while he was performing his job in a satisfactory manner, and after his complaints of harassment and discrimination. Mr. El Bakly testified that on several occasions he had made complaints to: District Manager Jose Gomez, Regional Human Resources Manager Willie Bush, Store Manager Rob Harris, and Assistant Store Manager Juan Gutierrez. Again, Store Manager Rob Harris's statement acknowledged during the purported investigation of Mr. El Bakly's complaints in February 2004 that he and District Manager Jose Gomez witnessed, received and addressed complaints of comments offensive to Mr. El Bakly's religion and national origin in June 2003. Plaintiff's Exhibit 11d. Mr. Gomez and Mr. Bush acknowledge formal complaints made to them during the month of February 2004, and a formal charge of discrimination was made on February 29, 2004 and served on the Defendant some time thereafter. This was the very same month during which Mr. El Bakly was sent home early as a reprimand, the same

month during which Mr. Enrique Alejandre wrote up Mr. El Bakly (Defendants' Exhibit 8(b) at page D-00014), the same month during which the investigation and accusations of his drug involvement arose. None of these are contested facts. It is also uncontested that during this compressed nine month period, Mr. El Bakly continued performing in a satisfactory manner yet also continued being subjected to the various adverse employment actions listed below.

The Plaintiff has also established that Commercial Specialist Enrique Alejandre was a non-Muslim, non-Egyptian, similarly situated employee, at the same store location. Unlike Mr. El Bakly, Mr. Alejandre did not lodge any complaints to anyone. Mr. Alejandre received more favorable treatment in that during this same time period he: 1. was not terminated; 2. was not written up (Defendants' Exh. 20); 3. did not have his job duties or responsibilities changed; 4. was not sent home prior to his normally scheduled time; 5. did not have his uniform or formal categorization changed; 6. was not accused or reprimanded for involvement with illegal drugs; 7. was not individually monitored for performance. Plaintiff further established that each of these incidents occurred at or around the time of his complaints to each of the individuals listed above. The number of adverse actions, their increasing severity, compressed into the same time period as Mr. El Bakly's complaints, and Defendants admission that Mr. El Bakly performed his work satisfactorily (thereby giving no non-retaliatory cause for any adverse employment action) during this same time period, lead to the inescapable conclusion that the employer was acting with a retaliatory animus. No reasonable factfinder could find for Defendant that there was no retaliation.

    c. Hostile Work Environment – Count 3

Defendant argues that Mr. El Bakly failed to establish that the harassment at his work was

severe or pervasive so as to alter the conditions of his environment because he testified that he was able to do his job well.  Defendant, however, does not identify which job task or which job role: either the proper commercial specialist role or the post-demotion driver role.  A hostile work environment claim requires a comprehensive analysis and must demonstrate, both subjectively and objectively, that the environment was one which a reasonable person would find hostile or abusive, and that the victim did perceive it to be so.  *Gentry* at 850.  No single element is dispositive.  *Id.*

Mr. El Bakly testified that he complained of the slurs, comments and jokes made repeatedly (as frequently as news of the Middle East was reported in the media) to management.  The very existence of various statements show that he reported it to management.  it is not contradictory to have suffered from stress, anxiety, depression and have suffered a deteriorating mental and physical condition as a result of abuse, and still be able to complete his job tasks in a satisfactory manner, particularly when those tasks had been reduced and responsibility decreased as a result of his demotion.

Next, the Defendant argues that it met its burden with respect to its *Ellerth/Faragher* affirmative defense: that it implemented policies designed to prevent and correct the harassment.  This, however, is not the only requirement for an *Ellerth/Faragher* defense.  In order to prevail in asserting the affirmative defense, the Defendant must have established that it 1. took both preventative and corrective steps to address the harassment; and 2. that the employee failed to take advantage of available preventative or corrective measures.  *Gentry* at 846.  All of these requirements must be established, not just one.   First, the only policy that was introduced to stop harassment consisted of a sexual harassment policy. Secondly, Mr. El Bakly testified, and Mr. Bush, the Human Resources Manager acknowledged that Mr. El Bakly complained to District

Manager Gomez, and himself, with documents also showing that the first complaint was made in as early June 2003 during the time Mr. Gomez witnessed it directly. Mr. El Bakly also testified that he would regularly tell the store managers to stop. These are the very same individuals charged with investigating and addressing harassing behavior. It was reasonable for a jury to find that Mr. El Bakly adequately complained of the harassing behavior, and that it did not cease, nor did Autozone take prompt steps to address it or stop it.

III. Damages

Compensatory Damages

The court is vested with broad discretion to fashion a complete remedy once it finds that a defendant has engaged in a practice prohibited by Title VII. *See* 42 U.S.C. § 2000e-5(g)(1); *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1580 (7th Cir. 1997). The statute aims "to make victims of unlawful discrimination whole by restoring them, so far as possible. . . to a position where they would have been were it not for the unlawful discrimination." Id. Complete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown. *Id.* (*citing EEOC v. O&G Spring and Wire Forms Specialty Co.,* 38 F.3d 872, 880 (7th Cir. 1994). If the victim of discrimination comes forward with evidence of the monetary harm the flowed from the employer's unlawful conduct, it is the employer's burden to prove that the victim failed to mitigate her damages or that the requested damages are otherwise excessive. *Id*. Lack of mitigation, then, is an affirmative defense that the employer bears the burden of proving. To do so, an employer must prove both that the claimant was not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance that he might have found comparable employment. Id.

Here, the Defendant Autozone has not asserted or proven that Mr. El Bakly failed to do any of these things. During his two days of testimony, he testified as to various places where he sought work, at places comparable to that which he held with Autozone. Therefore, the plaintiff proved that he satisfied his obligation, and the Defendant did not meet its burden.

Furthermore, compensatory damages may be awarded for pecuniary and non-pecuniary losses and includes awards for lost wages, emotional pain, humiliation, and loss of enjoyment of life. *Byrd* at 704. Jury Instruction 28 improperly instructed the jury that "no evidence of the dollar value of physical or mental./emotional pain and suffering or disability/loss of a normal life has been …. introduced. Mr. El Bakly testified extensively during trial as to his stress, his anxiety, his depression, his deteriorated medical condition, his inability to find subsequent employment despite various efforts, and his emotional pain and suffering generally. Instruction 28, therefore, misinformed the jury and potentially misled them. Furthermore, despite having certified and authenticated medical records, Mr. El Bakly was not allowed to introduce testimony evidence as to his physical and mental state or condition, or the medical procedures which he had undergone at the time of the events giving rise to his allegations. Mr. El Bakly also testified as to his pay rate at Autozone, and his date of termination. He testified as to how long he had been out of a job. For violations of this, Count 3, Mr. El Bakly requests compensatory damages in the amount of the statutory cap for his former employer Autozone, in addition to back pay, interest on back pay, attorneys fees, costs and any other type of relief authorized under 2000e-5(g)(1).

Punitive Damages

Mr. El Bakly established through documentary evidence that Autozone's own policies contain a chain of responsibility for investigating claims of discrimination and harassment once

they are made known to a member of management. This chain, as listed in the Defendant Autozone's own employee handbook (Exh. 53 at p. D-00153) begins with the store manager, followed by a Human Resources manager. In this case, Mr. El Bakly's harassment was known to a member of Human Resources management, namely District Manager Jose Gomez (Plaintiff's Exhibit 11d at page 1-2---Rob Harris' admission that he knew of comments made by Parts Sales Manager Chris Ramos to Mr. El Bakly which were offensive to his race, religion or national origin) as early as June 2003. This document demonstrates that no less than two members of escalating tiers of Autozone management knew of the problem. Mr. El Bakly's testimony corroborates Mr. Harris' written statement. Despite the fact that Mr. El Bakly availed himself of the policy's problem solving procedure through the direct exposure of two members of management to the incident, the problem persisted, as confirmed in Plaintiff's Exhibit 11c at page 2 – Mr. Robert Navarro's statement. That statement admits that this type of behavior continued "when an event in the news relating to the Iraq War or Middle Eastern event, someone might say 'your friends' or 'buddies' are in the paper again or what are your 'friends' up to now!" This statement was given on February 19, 2004 and describes incidents in the preceding months. There is no dispute that from June 2003 until February of 2004, management did not conduct any investigation and did not do anything to address the problem. This is in direct violation of Autozone's own written policy as contained in its handbook, (Defendants' Exh. 53 at p. D-00155) which states that "Supervisors are responsible for ensuring that the complaint is fully investigated." Id. at p. D-00155. The same page also lists steps in the Problem Solving Procedures section including Step 2 which provides that the employees "immediate supervisor shall insure that the complaint is fully investigated and a decision on appropriate action is carried out as quickly as possible." and Step 3 which states that the complaint shall be forwarded to the

divisional human resources manager and a recommendation will be forwarded to the regional manager r the divisional vice president as soon as possible.  It was proven in this case that even though knowledge of the incidents went through the Store Manager, up to the District Manager (the third tier of the problem solving procedures), nothing was done to investigate and nothing was done to resolve the problem.  These facts were not contested at trial.  The manifest weight of the evidence shows that Defendant Autozone deliberately failed to implement its own policies and procedures with respect to Mr. El Bakly's harassment and discrimination.   What's more, the Defendant never asserted that its policy was effective in addressing the harassment from June 2003 through February 2004, not in any documents or testimony.   Next, Defendant claims that the conduct stopped in February, after Mr. Willie Bush learned of the harassment and discrimination.   This is nine months later.   And it is at this time that the harassment and discrimination turned into retaliatory conduct.   It is not contested that this is when Mr. El Bakly was sent home early by Assistant Store Manager Juan Gutierrez, or that this is when he was written up by Commercial Specialist Enrique Alejandre (Exh. 8(b) at page D-00014).  No where have Defendants contested, however, that any of the other adverse employment actions such as: individualized monitoring, drug accusations and demotion ever ceased.  In fact, the documents show that they continued through Mr. El Bakly's termination, the final and worst of all adverse employment actions. No affirmative defense is available when a supervisor's harassment culminates in a tangible employment action, such as a discharge, demotion, or undesirable assignment. *Gentry v. Export Packaging Co.*, 238 F.3d 842, 846 (7th Cir.2001) (*quoting Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742 at 765.  The burden is on the employer to show that it took both preventative and corrective steps to address the [sexual] harassment.  *Id* at 846.  While Autozone may have shown that it has certain policies in place which addressed

sexual harassment, even assuming *arguendo* that this was an acceptable policy, it did not introduce evidence of any sort which demonstrates even a scintilla of evidence that it took any reasonably corrective steps to address the harassment in a timely manner as required by the *Gentry* ruling. For all of the foregoing reasons, judgment as a matter of law should be granted on the issue of punitive damages for Counts 1, 2, 4 and 5.

Finally, the jury in this case found for the Plaintiff and against Defendant Autozone on his claims of hostile work environment discrimination. Jury instruction number 29 instructed the jury as to the requirements and burdens of proof for purposes of punitive damages. Accordingly, the jury found that the Plaintiff has satisfied its burden that the conduct of managerial employees at Autozone acted in reckless disregard of Plaintiff's rights, *i.e.,* that the actions were taken with knowledge that they may violate the law, and did so in the scope of their employment. The jury further found that punitive damages were proven by the Plaintiff.

Next, the jury instruction goes on to advise the jury that if it does, in fact, find that punitive damages are appropriate, then they must use reason to set an amount sufficient to fulfill the purposes described in the instruction: to punish a defendant for his conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future.

In addition, the jury in this case asked the court whether it could award costs as a punitive damages. This communication clearly demonstrates that the jury was confused as to the purpose of punitive damages.

The jury in this case failed to reasonably set an amount sufficient to fulfill the purposes of the instruction, to punish the defendant for his conduct and serve as an example or warning to others. The evidence provided to the jury included testimony as to Autozone's nationwide presence, its 3,900 stores, its position as an industry leader, and its estimated 15 employees at

each of the 3,900 stores nationwide, its duration in business since 1979 and its claims to being the largest and fastest growing company in the automotive aftermarket industry. *See* Def. Exh. 53 at p. D-00146 and Plaintiff's Exhibit 9(d). Therefore, the amount of punitive damages awarded by the jury, $8,000, is contrary to the jury instruction that it was provided with and against the manifest weight of the evidence. The plaintiff requests a ruling to this effect and a rehearing on the issue of punitive damages.

Wherefore, based on the foregoing, the Plaintiff, Moustafa El Bakly, by and through his attorney, prays this Honorable Court grant him a judgment notwithstanding verdict on each of the 5 counts of his complaint and award damages, or in the alternative grant a new trial on Counts 1, 2, 4, and 5, and grant a rehearing on the award of compensatory and punitive damages for the Plaintiff's hostile work environment claim—Count 3.

Respectfully submitted,

By: _____
    Luis A. Oviedo
    Attorney for Plaintiff

Oviedo Burgos Associates LLC
33 N. LaSalle St., 29th Floor

Chicago, IL 60602
312-563-9960

**Cases Cited:**

*Byrd v. Ill. Dept. Public Health,* 423 F.3d 696 (7th Cir. 2005)

*David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003)

*EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569 (7th Cir. 1997)

*Gentry v. Export Packaging Co.*, 238 F.3d 842 (7th Cir. 2001)

*George v. Walker et al.*, 2007 U.S. Dist. LEXIS 53822 (7th Cir. 2007)

*Mathur v. Bd. Trustees*, 207 F.3d 938 (7th Cir. 2000)

*Riemer v. Ill. DOT*, 148 F.3d 800, (7th Cir. 1998)

## List of Exhibits

Defendatns' Exhibit 20
Defendants' Exhibit 41
Defendants' Exhibit 53


Plaintiff's Exhibit 3
Plaintiff's Exhibit 4
Plaintiff's Exhibit 8b
Plaintiff's Exhibit 9d
Plaintiff's Exhibit 11c
Plaintiff's exhibit 11d