**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MOUSTAFA EL-BAKLY,     )
             )
    Plaintiff,    )  No. 04 C 2767
             )
 v.         )
             )  Judge Robert M. Dow, Jr.
AUTOZONE, INC. a Nevada Corp., )
Rob Harris, Juan Gutierrez, and  )
Chris Ramos,       )
             )
    Defendants.  )

**MEMORANDUM OPINION AND ORDER**

Properly before the Court is Defendant AutoZone, Inc.'s renewed motion [147] for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, on Plaintiff's claim of co-worker harassment and punitive damages. Also under consideration by the Court is Plaintiff's motion for judgment as a matter of law on all claims on which the jury found against him [142].[1]  For the reasons set forth below, Plaintiff's motion [142] is denied and Defendant AutoZone's motion for judgment as matter of law [147] is granted.

---

[1] The Court has ample briefing from both parties on the motions before it. Before the Court are the following briefs submitted by the parties: Plaintiff's response to Defendants' initial Rule 50(a) motion for judgment as a matter of law and cross-motion for judgment as a matter of law [142], Defendant's renewed motion and memorandum in support of judgment as a matter of law, or in the alternative, for a new trial [147], Defendant's opposition to Plaintiff's cross-motion [148], Plaintiff's reply in support of his cross-motion and response to Defendant's renewed motion [155], and Defendants' reply in support of their renewed motion [156]. The Court also notes that Defendants properly moved both orally and in written form [see 136] for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), preserving their right to then renew their motion post-trial. See Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by that motion. No later than 10 days after the entry of judgment * * * the movant may file a renewed motion for judgment as a matter of law.").

# I.        Background

In this lawsuit, Plaintiff asserted several claims against Defendant AutoZone, claiming that (1) he suffered discrimination based on his religion, Islam, and national origin, Egyptian, as a result of an alleged demotion and assignment of job duties outside of the scope of his employment; (2) both his supervisors and co-workers subjected him to harassment based on his religion and/or national origin, creating a hostile work environment; and (3) AutoZone discharged him from his employment on account of his religion and/or national origin.  Plaintiff also pursued claims against the three individual defendants, Rob Harris, Juan Gutierrez, and Chris Ramos, claiming that all three subjected him to intentional infliction of emotional distress and defamed him.  Plaintiff sought both compensatory and punitive damages.

A jury trial was held in this case from April 21-24, 2008.  At the close of Plaintiff's case-in-chief, Defendants collectively moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  Defendants filed a written memorandum in support of their motion the next day.  [136]. Plaintiff did not move for judgment as a matter of law on his claims at the close of his case-in-chief; rather, Plaintiff waited until April 25, 2008, a day after the jury returned its verdict, to file his motion for judgment as a matter of law [142] in combination with his response to Defendants' motion for judgment as a matter of law.

On April 24, 2008, the jury returned a verdict in favor of the three individual Defendants Rob Harris, Juan Gutierrez, and Chris Ramos on all claims (intentional infliction of emotional distress and defamation) against them.  The jury also found in favor of AutoZone and against Plaintiff on all claims save for one:  on Plaintiff's claim of co-worker harassment, the jury returned a verdict in favor of Plaintiff and against AutoZone and awarded Plaintiff $8,000.00 in punitive damages.

Defendants contend that Plaintiff's failure to move for judgment as a matter law at the close of his case-in-chief is fatal to his request for the relief he requests now. In the alternative, Defendants contend that Plaintiff's motion fails on its merits. With respect to Defendant's renewed motion for judgment as a matter of law on Plaintiff's co-worker harassment claim, Plaintiff contends that the record contains ample evidence to support the jury's verdict in his favor both on the elements of the claim and the award of punitive damages.

## II.    Analysis

### A.  Standard of Review

On a motion for judgment as a matter of law under Fed. R. Civ. P. 50, a court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party, is sufficient to support the verdict. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000); see also *Hall v. Gary Community Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002). Although a mere scintilla of evidence is not sufficient to sustain a verdict, the Court is not to substitute its view of the contested evidence in place of the jury's determination. *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). A jury verdict is not to be set aside if, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support the verdict, leaving issues of credibility and weight of evidence to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); see also *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 630 (7th Cir. 1996) (the court is limited to assessing whether no rational jury could have found for the plaintiff). A trial court may grant a motion for a new trial where "the clear weight of the evidence is against the

jury verdict, the damages are excessive or for some other reason the trial was not fair to the moving party." *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993) (citing *Walden v. Ill. Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992)). However, the Seventh Circuit has cautioned that "only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Emmel*, 95 F.3d at 629.

### B. Plaintiff's Motion for Judgment as a Matter of Law

#### 1. *Timeliness of Plaintiff's Motion*

Defendants raise a threshold issue in opposition to Plaintiff's motion for judgment as a matter of law, arguing that Plaintiff failed to comply with Fed. R. Civ. P. 50(a)(2)'s requirement that such a motion be made "any time before the case is submitted to the jury." The Seventh Circuit has stated unequivocally that a failure to move for judgment as a matter of law prior to jury deliberation is fatal to any post-trial motion for judgment as a matter of law. See *Production Specialties Group, Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008) (noting strict enforcement of this principle and affirming the district court's holding that a party's failure to first move for judgment as a matter of law at the close of evidence prohibited consideration of a judgment notwithstanding the verdict); see also *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003) (moving for a directed verdict on a issue is a prerequisite to judgment as a matter of law and failure to do so waives that issue post-trial); *Arifin v. Matuszuwich*, 2000 WL 796146, at *2 (N.D. Ill. June 20, 2000) (finding plaintiffs' motion for "judgment as a matter of law" barred by the plaintiffs' "failure to preserve it for post-trial consideration by making it at the close of evidence"). Only after a party has moved for judgment as a matter of law prior to submission of the case to the jury may the Court consider a *renewed* motion for judgment as a

matter of law under Fed. R. Civ. P. 50(b).  As the rule expressly states, "[*i*]f the court does not grant a motion for judgment as a matter of law *made under Rule 50(a),* the court is considered to have submitted the action to the jury subject to the court's later decision the legal questions raised by the motion.  * * *  No later than 10 days after the entry of judgment * * * the movant may file a *renewed* motion for judgment as a matter of law."  Fed. R. Civ. P. 50(b) (emphasis added).

Here, it is undisputed that Plaintiff failed to move for judgment as a matter of law at any time during the course of the trial and prior to the return of the verdict.  Accordingly, under clear Seventh Circuit precedent, Plaintiff's motion must be denied as a matter of law on that ground alone.  Moreover, as discussed below, Plaintiff's motion would fail even if he had preserved his right to bring it.

### 2.  *Discrimination*

The jury found in favor of AutoZone and against Plaintiff on his Title VII discrimination claim.  "During and after any Title VII trial, the sole legal issue is whether the plaintiff presented sufficient evidence to permit a rational jury to determine that [he] was the victim of intentional discrimination."  *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 862 (7th Cir. 2007) (citing *Massey v. Blue Cross-Blue Shield of Illinois,* 226 F.3d 922, 925 (7th Cir. 2000). The Seventh Circuit stresses that the *McDonnell Douglas* burden shifting framework "should no longer be considered" once a case reaches trial.  *Id.* (citing *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 708 (7th Cir. 2004); see also *Hall v. Gavy Cmty. Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002) (the burden shifting framework is "unnecessary when reviewing judgments as a matter of law")).

Thus, the question is whether Plaintiff established sufficient evidence at trial — either direct or circumstantial — to support his contention that no rational jury could have found against him on his claim that AutoZone intentionally discriminated against him and/or discharged him because he is of Egyptian origin and Muslim. *Hossack*, 492 F.3d at 862; see also *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002) ("Post-trial we only consider whether the record supports the resolution of the ultimate question of intentional discrimination"); *Waite v. Bd. of Trs. of Illinois Community College Dist. No. 508,* 408 F.3d 339, 343 (7th Cir. 2005) (same). In other words, Plaintiff must show that the jury's decision not to believe Plaintiff's explanation of intentional discrimination was irrational in light of the evidence presented. See *Milbrook*, 280 F.3d at 1174.

The Supreme Court has instructed that a court should consider a number of factors when assessing the sufficiency of the evidence, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-149 (2000). A plaintiff alleging discrimination can proceed directly, by presenting direct evidence of discriminatory intent,[2] or proceed indirectly. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). A *prima facie* showing is made indirectly where the plaintiff

---

[2] The Seventh Circuit defines direct evidence in the employment law context as evidence which, if believed by the trier of fact, proves the issue in question without inference or presumption. See, *e.g. Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted). Thus, "[d]irect evidence usually requires an admission by the decision-maker that his [or her] actions were based" on the prohibited decision-making criterion, here, Plaintiff's religion and national origin. *Balderson v. Fairbanks More Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003); see also *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) ("Direct evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus'") (internal citation omitted). No such admission or evidence on the part of Defendants was elicited at trial, and thus the Court will consider the strength of Plaintiff's *prima facie* showing against the trial record under the indirect method.

demonstrates that (1) he or she was a member of a protected class, (2) he or she was performing the job satisfactorily, (3) he or she suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside of the plaintiff's class more favorably. *Id.* at 978-979; see also *Waite*, 408 F.3d at 343 (citing *Foster v. Arthur Andersen LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999)). The parties do not appear to dispute that Plaintiff established the first two elements. However, Defendants contend that Plaintiff was unable either (1) to show that he suffered an adverse employment action or (ii) to identify a similarly situated person at AutoZone sufficient to prove the final element, let alone to meet the standard required to overturn the jury's conclusion that Plaintiff failed to establish this claim. The Court agrees with Defendants.

The Court first addresses Defendant's challenge to the sufficiency of Plaintiff's evidence that he was subjected to an adverse employment action. Apart from testimony regarding his termination (an event which Defendants concede may qualify as a conceptual matter, but which in this instance came too late as a matter of law to aid Plaintiff's case (see below)), Plaintiff failed to establish that he suffered *any other* adverse employment action, such as demotion or diminution in pay, while working at AutoZone. In order to establish an adverse employment action, the Seventh Circuit has held that the harm to the plaintiff must involve economic injury and/or materially alter the terms and conditions of employment. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002) (adverse employment actions tend to be economic injuries); *Stutler v. Illinois Dept. of Corr.*, 263 F.3d 698, 702-703 (7th Cir. 2001) (adverse employment actions often require a change for the worse in employment conditions, such as loss of benefits or decrease in responsibilities – "[b]eing shifted to an essentially equivalent job that [the plaintiff] did not happen to like as much does not a Title VII claim

create" (citation omitted)). Typically, adverse employment actions are injuries such as "dismissal, suspension, failure to promote, or diminution in pay." *Id.*[3]

Here, Plaintiff testified that he was subjected to harassment and discriminatory conduct at work starting at the outset of the Iraq war, in or around March, 2003 (see Trial Trans. at 76, 156) until he reported such conduct to AutoZone's Human Resources department in or around February, 2004 (see Trial Trans. at 183-184). Plaintiff testified that during the relevant period, his pay was not decreased and he was paid for all time he worked at AutoZone. Trial Trans. at 50, 164-165. At trial, multiple witnesses testified that Plaintiff's job duties did not change during that time period, nor were his duties different from his fellow employees, from commercial drivers up through the store manager, particularly in regard to cleaning the bathroom and the parking lots – which were Plaintiff's chief complaints of disparate treatment. See, *e.g.*, Trial Trans. at 272, 409, 419-420, 431, 433, 444-446, 473, 491-492. Finally, Plaintiff suggested that being required to wear a certain colored T-shirt — gray versus red — resulted in an adverse employment action. But that wardrobe change had no economic or material affect on Plaintiff's employment and thus is "too trivial" to amount to an adverse employment action. *Place*, 215 F.3d at 810 (finding that loss of a telephone and cubicle was "too trivial" and did not rise to the level of an adverse employment action).

---

[3] *Markel*, 276 F.3d at 911, also referenced several Seventh Circuit cases highlighting the types of actions which do not qualify as adverse employment actions – *Stutler v. Illinois Dept. of Corr.*, 263 F.3d 698, 702-703 (7th Cir. 2001) (holding that a "lateral transfer without a loss in benefits does not constitute an adverse employment action"); *Fyfe v. City of Fort Wayne*, 241 F.3d 597. 602 (7th Cir. 2001) (holding that the denial of a request for reimbursement for travel expenses did not constitute an adverse employment action); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 887-88 (7th Cir. 2001) (same); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) (holding that the denial of a bonus was not an adverse employment action); *Place v. Abbott Lab.*, 215 F.3d 803, 810 (7th Cir. 2000) (holding that a loss of a telephone and cubicle were "too trivial to amount to an adverse employment action"); *Conley v. Village of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000) (requiring village maintenance worker plaintiff to paint water department pump room was not an adverse employment action).

Based on the record, the only remaining viable adverse employment action is discharge. However, Plaintiff testified that all discriminatory conduct ceased around February 2004 once he reported the conduct to AutoZone's Human Resources, via Willie Bush, the representative for the store ("Store #2575") at which he worked. Trial Trans. at 183-184. Plaintiff was not terminated until June 2004, almost four months later. See, *e.g.*, Trial Trans. at 138 (Plaintiff testified he was fired June 6, 2004). The Seventh Circuit has held "[a] substantial time lapse (here, four months) between the protected activity and the adverse employment action is 'counter-evidence of any causal connection.'" *Filipovich v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (internal citation omitted)); see also *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (finding five-month lapse in time insufficient to support any inference of causation). Defendants present persuasive and unrefuted authority from other circuits holding that a similarly long lag time between the events giving rise to the complaint and the adverse employment action is insufficient as a matter of law to provide the requisite causal link. See *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month lag between FLSA complaint and retaliation insufficient); *Wascura v. City of South Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) (three-and-a-half month lag between protected activity and adverse employment action was insufficient to support causal link between the two); *Conner v. Schnuck Markets, Inc.* 121 F.3d 1390, 1395 (11th Cir. 1997) (four months insufficient to support an inference of causation). The nearly four-month lag time presented in the record of this case leads the Court to conclude that Plaintiff failed to establish a causal link between the alleged discriminatory acts and the only adverse employment action that is even remotely supported by the record – his termination.

Defendants also argue that Plaintiff failed to present any evidence that any person at AutoZone who was similarly situated to Plaintiff was treated more favorably. In fact, Defendants contend that the evidence showed that the person whom Plaintiff argues was similarly situated to him – the primary commercial specialist, Enrique Alejandre – did not have similar episodes of misconduct. AutoZone management testified that Plaintiff was terminated for loss of confidence based upon a statement made by Plaintiff that he had no problem driving while "high" and a subsequent discovery of what appeared to be marijuana in a truck normally driven by Plaintiff. See, *e.g.*, Trial Trans. at 485-487 (Harris testimony about the factual incidents in question); Trial Trans. at 584, 586 (Merchant testimony about his decision to terminate Plaintiff based on the incidents testified to by Harris). Defendants argue that Plaintiff failed to offer any evidence that Mr. Alejandre was similarly situated to Plaintiff because Mr. Alejandre had not been accused of any similar misconduct, and that such a showing is required to prove this element.

Defendants are correct that "[a] similarly situated employee is one who is 'directly comparable to the plaintiff in all material respects.'" *Rogers*, 320 F.3d at 755 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Evidence of a "similarly situated" employee "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). First, Plaintiff himself testified that Mr. Alejandre was one of his supervisors and that Mr. Alejandre was "like his boss" and Plaintiff was Mr. Alejandre's assistant. Trial Trans. at 169-170; see also Trial Trans. at 441, 457 (Alejandre testimony that he was Plaintiff's immediate supervisor). That

testimony alone disqualifies Mr. Alejandre as a similarly situated employee, because he and Plaintiff were not "subject to the same standards." Moreover, even if Mr. Alejandro and Plaintiff had been on equal footing in terms of job responsibilities, Mr. Alejandro had not been accused of making comments about driving while high, nor had anyone reported discovering marijuana in his workspace. See *Alvi v. Metro. Water Reclamation Dist. of Greater Chicago*, 2006 WL 1762032, at *5 (N.D. Ill. June 23, 2006) (citing *Rogers*, 320 F.3d at 755) (finding employees were not similarly situated where there was no evidence that the other employees acted under circumstances similar to the plaintiff's). Finally, the trial testimony established that Mr. Alejandre was the only other Commercial Specialist at the Franklin Park Store (see Trial Trans. at 72-73), and thus no other employee was, or could be, considered for a "similarly situated" analysis.

The foregoing evidence shows that Plaintiff's *prima facie* case was very weak and easily could have been found wanting by the jury. In addition, the jury's verdict in favor of Defendants is supported by the unrefuted testimony regarding Defendant's decision to terminate Plaintiff based on a loss of confidence. As noted above, one of the factors in considering whether a jury determination was rational in light of the evidence presented at trial is the "probative value of the proof that the employer's explanation is false." *Reeves v. Sanderson*, 530 U.S. 133, 148 (2000). As previously mentioned, the record established that AutoZone terminated Plaintiff for loss of confidence grounded in two instances: (1) a comment made to store manager Rob Harris and to Enrique Alejandro that he had no problem driving high and (2) the discovery of evidence of marijuana in the truck normally driven by Plaintiff. Trial Trans. at 584, 586 (Merchant testified it was his decision to terminate Plaintiff based upon these two incidents). Merchant alone made the decision to terminate Plaintiff. Trial Trans. at 295, 584. Plaintiff offered no testimony or

evidence in rebuttal bearing on the veracity of AutoZone's reason for terminating Plaintiff or of any discriminatory intent on the part of Rich Merchant, and thus there is no support for any suggestion that AutoZone's explanation for terminating Plaintiff was false or pre-textual.

All of the evidence in this case points towards the conclusion that the jury reached: that Plaintiff failed to prove by a preponderance of the evidence that Defendants discriminated against him on the basis of national origin or religion. Plaintiff fails to provide any persuasive explanation for his view that no rational jury could have reached such a result.

### 3. *Retaliation*

The jury found in favor of AutoZone and against Plaintiff on his Title VII retaliation claim. To prove a Title VII retaliation claim at trial, a plaintiff must show that: 1) he engaged in a statutorily protected activity; 2) there was an adverse action taken by the defendant; and 3) there was a causal connection between the protected activity and the adverse action. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). A causal link may be proved by showing that the "protected conduct was a substantial or motivating factor in the employer's decision," and need not amount to a "but-for factor or to the only fact, but is rather a factor that motivated the defendant's actions." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).

Here, Plaintiff cannot come close to showing that no rational jury could have found against him on his retaliation claim. For the reasons cited above regarding the lag time between the events of which Plaintiff complained (the discrimination reported in February of 2004 that led to Plaintiff's filing of an EEOC charge at that time) and Plaintiff's termination in June 2004, Plaintiff's claim must fail. Such a lag time is too lengthy as a matter of law. Moreover, even absent a legal determination that no causal link existed between the two given the lag time between the operative events, the jury was entitled to reject Plaintiff's claim — particularly in

view of Plaintiff's own testimony that he had no evidence that his termination was based on his complaint of discrimination. See, *e.g.*, Trial Trans. at 148.

In light of the deficiencies in the evidence presented by Plaintiff on his retaliation claim, Plaintiff failed to meet the requisite standard for showing that no rational jury could have found against him.[4]

### 4. *Supervisor Harassment/ Hostile Work Environment*

The jury found in favor of AutoZone and against Plaintiff on his Title VII claim that he was harassed by three of his supervisors, Rob Harris, Juan Gutierrez, and Chris Ramos in a manner that Plaintiff claims created a hostile work environment. Plaintiff contends that sufficient evidence was presented to find in his favor on that claim. See Pl. Motion at 10-11. But Plaintiff has not established that no rational jury could have found against him on the supervisory harassment claim, which requires a showing of the following: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or otherwise offensive working environment that seriously affected his psychological well-being, and (4) basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) (citing *Parkins v. Civil Constructors or Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). As to the fourth element, "harassment by a supervisor of the plaintiff triggers strict liability, subject to the

---

[4] As a final note, any objection by Plaintiff that the jury instructions failed to include an adverse employment action other than termination lacks merit. See Pls. Mot. at 8-9. By its nature, a retaliation claim requires that the Plaintiff engage in protected activity and that the employer retaliate in response to such activity. See *Sitar*, 344 F.3d at 728. Here, Plaintiff did not exercise his right to voice his complaints of discrimination until February of 2004, when he filed his EEOC charge and contacted AutoZone's human resources department. Trial Trans. at 179-84. Plaintiff testified that after he complained to Human Resources by contacting Willie Bush, the harassing and other discriminatory conduct stopped. Trial Trans. at 183-184. The only evidence presented by Plaintiff of an adverse employment action between February 2004 and June 2004 was his termination, and thus any claim based upon other adverse employment actions cannot be sustained.

possibility of an affirmative defense where the plaintiff suffered no tangible employment action."
*Id.*

The Court's review of the record at trial reveals no testimony by any witness other than Plaintiff supporting the contention that Rob Harris, Chris Ramos or Juan Gutierrez harassed Plaintiff on the basis of his national origin or religion. In fact, most of the witnesses testified that they did not hear any discriminatory remarks directed at Plaintiff, and none whatsoever made by the individual Defendants.[5] In support of his contention that he was harassed based on his religion or national origin by the individual Defendants, Plaintiff offered the following testimony: (1) Chris Ramos made a comment "Hey, Moustafa, he got training in Afghanistan" about Plaintiff in front of others and nothing was done (Trial Trans. at 86); (2) during a conversation about Allah, Chris Ramos said to him, "Is Allah in my ass" (Trial Trans. at 91); (3) Juan Gutierrez, during a conversation with Plaintiff, said "I [am] going to become Muslim because during the salat, during the prayer, especially for woman, when you set the knee because it's a message for pray, where they set they knew I want to make sex for them from the back." (Trial Trans. at 91); and (4) before a monthly store meeting, Juan Gutierrez laughed in front of everyone and stated, "Hey Moustafa, I want to be, I [am] going to be Muslim like Moustafa because I [am] going to go with him to Afghanistan for training" (Trial Trans. at 92). But even if the Court were to find these comments, which Plaintiff attributes to Chris Ramos and Juan

---

[5] Other than Plaintiff, only two witnesses mentioned comments which could be considered discriminatory — Bob Navarro and Jose Jiminez — but their testimony does not indicate that the three individual defendants, Plaintiff's supervisors, were the accused harassers. Trial Trans. at 339, 343, 348-349 (Navarro testified that he heard occasional comments directed at El Bakly that "his buddies" or friends where in the paper again during the course of the Iraq War); 225-226 (Jiminez testified that he comments were made about Al Quaeda and terrorists, as well as Arabs and Muslims but he was not certain they were directed at El Bakly); see also Pl. Trial Ex. 11C at pg. 2 (Navarro's statement to Willie Bush during the investigation into Plaintiff's complaints of harassment that he had overheard comments about Plaintiff's "buddies" or friends are in the paper again during the Iraq War).

Gutierrez, to be troubling or inappropriate, it was the province of the jury to evaluate them in light of all of the evidence in the case, and a rational jury may have made a credibility determination in favor of Defendants and against Plaintiff as to those statements.[6]

Presumably in light of Plaintiff's testimony which at least arguably could support the first two elements for Plaintiff's supervisory harassment claim against AutoZone based on the conduct of Chris Ramos and Juan Gutierrez, Defendants argue they established the affirmative defense available to defeat liability under the fourth element of the test. See Defs. Opp. at 8. The Court agrees that, even assuming that Plaintiff could establish that the three individual supervisors harassed him triggering a strict liability theory (which Plaintiff failed to do at least with respect to Rob Harris), AutoZone presented evidence sufficient to establish the affirmative defense that is available for a supervisor harassment claim where Plaintiff did not allege suffering a tangible employment action related to such harassment.[7]  When considering the fourth element of a supervisor harassment claim where no tangible employment action has been

---

[6] Plaintiff offered no specific testimony that Rob Harris harassed him based on his religion or national origin, and therefore the claim against Rob Harris fails as a matter of law on this element, consistent with the jury's verdict in favor of Rob Harris on this claim.

[7] Much of Plaintiff's argument with respect to this claim focuses on his argument that the jury instruction for supervisory harassment should not have included an affirmative defense for Defendant AutoZone because he was subjected to a tangible employment action.  Plaintiff's argument is not well taken because he failed to object at the instruction conference to the giving of the instruction that specifically addresses a hostile work environment claim where no tangible employment action is alleged (which, the Court notes, follows the Seventh Circuit's pattern instruction No. 3.05B).  In fact, Plaintiff's counsel agreed with the use of 3.05B as the appropriate instruction for this claim.  Trial Trans. at 563-564.  Plaintiff's failure to object this instruction constitutes a waiver pursuant to Fed. R. Civ. P. 51.  *Wilson v. Kelkoff*, 86 F.3d 1438, 1442 (7th Cir. 1996) (citing *Bogan v. Stroud*, 958 F.2d 180, 182-83 (7th Cir. 1992)) (a party waives an argument based upon a jury instruction if he failed to object to the relevant jury instruction under Fed. R. Civ. P. 51); Fed. R. Civ. P. 51(c)(1) ("a party who objects to an instruction * * * *must* do so on the record, stating distinctly the matter objected to and the grounds for the objection" (emphasis added)).  In addition, as noted above, to the extent that Plaintiff relies on his termination as the adverse employment action, such reliance fails as a matter of law on causation grounds in view of the lapse in time between February 2004, when Plaintiff testified that the harassment stopped, and June 2004, when he was terminated.

alleged, employers can defeat liability by proving the following affirmative defense: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the employee (Plaintiff) unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (1998). Although Defendants bore the burden of establishing the affirmative defense at trial, Plaintiff, as the movant here, bears the burden to show that no rational jury could have found that AutoZone met its burden on the affirmative defense in order to defeat liability. AutoZone presented evidence that: (1) Plaintiff never formally complained to AutoZone's Human Resources, by calling Willie Bush, about any discriminatory conduct until February of 2004 and only did so once (Trial Trans. at 179); (2) Plaintiff was aware that Human Resources was the appropriate department at AutoZone in terms of handling such complaints, and in fact, signed a diversity statement to that effect (Trial Trans. at 171-172, 517; Defs. Ex. 7); (3) a diversity training session promptly was held in response to Plaintiff's complaints[8] (Trial Trans. at 525); and (4) the harassment stopped in February 2004 (Trial Trans. at 183-184). Based on that evidence, a rational jury could have found that AutoZone met it burden. While Plaintiff testified of harassment beginning in March of 2003, he failed to utilize the resources available to him until February of 2004, and once he did, AutoZone took preventative measures by conducting diversity training, after which the alleged harassment ceased. Plaintiff could not

---

[8] Plaintiff attempts to argue that a June, 2003 incident with Chris Ramos was motivated by animus related to Plaintiff's religion or national origin. See, *e.g.*, Pls. Reply at 7. However, there simply is no evidence that this incident was illicitly motivated. The evidence established that Ramos made a comment that Plaintiff had not been working, and was reprimanded by Jose Gomez, Ramos' supervisor, for making such a comment because it was unprofessional for a manager to speak to employees in that way. See, *e.g.*, Trial Trans. at 396, 401, 490.

meet his burden of establishing that the evidence compels the opposite result and that no rational jury could have found otherwise.

### 5.   *Defamation and Intentional Infliction of Emotional Distress*

The jury found in favor of all three individual Defendants and against Plaintiff on both his defamation claim and his intentional infliction of emotional distress claim.   Although it appears Plaintiff intended to move for judgment as a matter of law on all counts in his complaint (see, *e.g.*, Pl. Motion at 17; Pl. Reply at 13), Rule 50 requires that a party moving for judgment as a matter of law state the basis for such a motion – it must "specify the judgment sought and the law and facts that entitle the movant to the judgment."   Fed. R. Civ. P. 50(a)(2).   Plaintiff fails to set forth any facts from the record supporting judgment in his favor nor does he provide any argument or authority in support of such a judgment, as to either of his state law claims against the individual defendants.

## C.  Defendant AutoZone's Motion for Judgment as a Matter of Law

In its renewed motion for judgment as a matter of law, or in the alternative, for a new trial, Defendant AutoZone challenges the sufficiency of the evidence presented at trial in support of Plaintiff's claim of co-worker harassment resulting in a hostile work environment and the ensuing award of punitive damages.   The jury found in favor of Plaintiff on his hostile work environment claim based on co-worker harassment (as opposed to supervisor harassment, a distinct claim addressed above).

As explained above, a plaintiff must establish each of the following elements to prove a harassment claim resulting in a hostile work environment:   (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or otherwise offensive working

environment that seriously affected his psychological well-being (both objectively and from the employee's subjective perspective), and (4) a basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) (citing *Parkins v. Civil Constructors or Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). However, in the context of co-worker harassment, strict liability does not attach to the employer under the fourth element, subject to a possible affirmative defense. *Hrobowski*, 358 F.3d at 477. Instead, the employer may be found liable only upon a showing by the plaintiff that the employer had "been negligent either in discovering or remedying the harassment" resulting in the hostile work environment created by the plaintiff's co-worker. *Id.* An employer "will not be liable for the hostile work environment [caused by the plaintiff's co-worker] absent proof that it failed to take appropriate remedial measures *once apprised of the harassment.*" *Id.* at 478 (internal citation omitted). "Generally the law does not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Id.* (quoting *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999)). A plaintiff bears the burden of showing each of the four elements (unlike the strict liability triggered under the fourth element for an employer under a supervisory hostile work environment claims).

AutoZone first argues that Plaintiff's co-worker harassment claim is precluded by Plaintiff's failure to exhaust his administrative remedies on any hostile work environment claim based upon *co-worker* harassment. Defs. Motion at 2-3; Defs. Reply at 3-6. AutoZone contends that because Plaintiff failed to identify a specific co-worker as one of his alleged harassers in his EEOC charge (indentifying instead only managers or supervisors), he should have been barred from pursuing such a claim and presenting the claim to the jury. *Id.*

A Title VII plaintiff may not bring in a federal lawsuit claims that were not presented in the underlying EEOC charge. *Vela v. Village of Sauk Village*, 218 F.3d 661, 669 (7th Cir. 2000); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985); see also *Green v. Illinois Dept. of Children and Family Servs.*, 439 F. Supp. 2d 841, 852 (N.D. Ill. 2006). In accordance with that principle, the Seventh Circuit has explained that the EEOC charge is "designed to afford the defendant notice of the allegations and to permit reconciliation by the EEOC." *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir. 1988) (citations omitted). An exception to that rule exists, however, where the subsequent claim is "reasonably related" to the claim included in the EEOC charge. *McKenzie v. Illinois Dept. of Trans.*, 92 F.3d 473, 482-483 (7th Cir. 1996). To be reasonably related, a factual relationship must exist between both claims, such that the subsequent claim (raised by a plaintiff in a Title VII suit) reasonably can be expected to be developed from an investigation of the allegations in the EEOC charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Claims are not "reasonably related" if the EEOC charge and the plaintiff's complaint do not describe the same conduct and implicate the *same individuals*. *McKenzie*, 92 F.3d at 481 (emphasis added); *Green*, 439 F. Supp. 2d at 852.

In his EEOC charge, Plaintiff named five alleged harassers and identified all of them as managers: the three individual Defendants Rob Harris, Chris Ramos, and Juan Gutierrez, as well as Ricardo Maldonado and Bob Navarro. Plaintiff's co-worker harassment claim necessarily does not encompass the conduct of his supervisors, Rob Harris, Chris Ramos and Juan Gutierrez – their conduct already was the subject of the *supervisory* hostile work environment claim addressed above. That leaves Ricardo Maldonado and Bob Navarro as potential co-workers. However, Ricardo Maldonado was *not* Plaintiff's co-worker; Maldonado was Plaintiff's

supervisor at Store #2575, and was subsequently replaced by Enrique Alejandre. Trial Trans. at 208 (Plaintiff testified that Maldonado was a Commercial Specialist and his direct supervisor when he first started at AutoZone Store #2575); Trial Trans. at 71, 271. Plaintiff presumably chose not to pursue a claim against AutoZone based on Maldonado's conduct, and in fact, offered no testimony at trial that Maldonado harassed him.

That leaves Bob Navarro as a potential target for a co-worker harassment claim that could be advanced consistent with Plaintiff's EEOC charge. At trial and for purposes of the instructions to the jury, Plaintiff did not identify Bob Navarro as one of the supervisors contributed to his hostile work environment; rather, Plaintiff pointed only to the three individual Defendants, and no question has ever been raised as to their status as supervisors. Plaintiff did testify at trial that Bob Navarro drew a Star of David on some paperwork that Plaintiff had been working on and ran away laughing. Trial Trans. at 106. Setting to the side for the moment whether such conduct would be sufficient to support the jury verdict, the Court must first address whether Bob Navarro should be considered a co-worker or a supervisor.

AutoZone's argument presumes that any hostile work environment claim brought by Plaintiff based on the conduct of Bob Navarro necessarily is a supervisor claim, rather than a co-worker harassment claim, based on Plaintiff's identification of Bob Navarro in the EEOC charge as a "manager." However, it is not clear from the record that Bob Navarro was in fact Plaintiff's supervisor. "[I]t is not enough that he point to evidence that just anybody with managerial authority was [] abusive; instead, [Plaintiff] must show that the harasser was *his* supervisor." *Hrobowski*, 358 F.3d 473 (citation omitted). "A supervisor is someone with the power to affect the terms and conditions of the plaintiff's employment." *Id.* On the record, the Court cannot

conclude that Bob Navarro was Plaintiff's supervisor and thus Plaintiff's co-worker harassment claim survives at least as to that potential objection.

In regard to AutoZone's failure to exhaust argument, the Court agrees that Plaintiff is bound by the claims raised in his EEOC charge, as least with respect to *which individuals* whom he identified as alleged harassers. See *McKenzie*, 92 F.3d at 481; *Green*, 439 F. Supp. 2d at 852. Plaintiff's argument that his co-worker harassment claims must survive because it reasonably relates to his supervisory harassment claim ignores the clear Seventh Circuit authority holding that a factual relationship must exist between the claims, such that the subsequently developed claim (here, the co-worker harassment claim presented at trial) can reasonably be expected to be developed from an investigation of the allegations set forth in the EEOC charge (here, the supervisory harassment allegations). *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Plaintiff's EEOC charge identifies "managers" as the culpable harassers — and an investigation would have been reasonably targeted at the individuals identified in the charge — i.e. AutoZone management, not other (still unidentified) individual employees. See, *e.g.*, *Chacko v. Patuxtext Institution*, 429 F.3d 505, 511 (4th Cir. 2005) (reversing a jury verdict on a co-worker harassment claim where the evidence involved a different set of individuals within the employer, rather than the claim in Plaintiff's administrative charge that supervisors had harassed him); *Robinson v. Getting/Castle, Inc.*, 2005 WL 272964. at *4-5 (W.D.N.Y. 2005) (finding that coworker harassment claims are not reasonably related to claims of supervisor harassment alleged in the underlying administrative charge). On the basis of these authorities, the Court concludes that to the extent that Plaintiff did not identify other *individual* employees that subjected him to harassment leading to his contention that the work environment was hostile, Plaintiff failed to exhaust this claim as it relates to unidentified individuals, and therefore

should have been barred from reaching the jury. The claim survives this stage of the analysis, however, with respect to Bob Navarro, and thus the Court goes on to consider whether the jury verdict should stand.

After careful analysis of the entire trial record, the Court must agree with AutoZone that, wholly apart from Plaintiff's failure to exhaust, no rational jury could have found for Plaintiff on his hostile work environment claim based on co-worker harassment under the appropriate standard, for claims based on harassment by Bob Navarro or *any other employee*. As for the incident involving Bob Navarro, Plaintiff's claim fails as a matter of law because Plaintiff testified that he *never reported* it. Trial Trans. at 107. That admission by Plaintiff negates any possibility that Plaintiff could satisfy the fourth element for imposing liability on AutoZone, because an employer "will not be liable for the hostile work environment [caused by the co-worker] absent proof that it failed to take appropriate remedial measures *once apprised of the harassment*." *Hrobowski*, 358 F.3d at 478 (internal citation omitted). AutoZone was never apprised, and therefore could not have responded to any situation involving alleged harassment of Plaintiff by Mr. Navarro.

In addition, even if Plaintiff had exhausted his administrative remedies with respect to his more general claims that unidentified employees harassed him, such claims would have failed for the same reason. "Generally the law does not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Hrobowski*, 358 F.3d at 477 (quoting *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999)). Plaintiff testified that he only formally complained about any discriminatory conduct *once* to AutoZone's Human Resources, by calling Willie Bush in February of 2004. Trial Trans. at 179. Following Plaintiff's complaint, a diversity training almost immediately was

held. Trial Trans. at 525. And Plaintiff testified that the harassment stopped in February 2004. Trial Trans. at 183-184. Thus, Plaintiff did not (and cannot) show that AutoZone had "been negligent either in discovering or remedying the harassment," resulting in the hostile work environment created by Plaintiffs' (unidentified) co-workers. *Id.*

* * * * *

While the Court approaches motions to overturn jury verdicts with some trepidation, the Court is duty bound to apply the controlling legal standards to the evidence adduced at trial in determining whether the verdict can stand. Here, after a careful examination of the trial transcripts and the pertinent rules and case law, the Court concludes that the verdict in favor of Plaintiff and against Defendant AutoZone on Plaintiff's claim of co-worker harassment must be overturned as a matter of law. As explained above, in view of the absence of evidence that AutoZone "failed to take appropriate remedial measures *once apprised of the harassment*" (*Hrobowski*, 358 F.3d at 478; emphasis added), Plaintiff failed to adduce any evidence from which the jury could have found the fourth element of Plaintiff's hostile environment claim based on co-worker harassment to be satisfied under any possible scenario. Accordingly, the Court must conclude that no rational jury could have reached the result that the jury reached in this case with respect to that claim and AutoZone's motion for judgment of a matter of law must be granted. Furthermore, because the Court grants AutoZone's motion for judgment as a matter of law as to the jury's verdict as to any liability by AutoZone on such a claim, the Court necessarily must overturn the punitive damages award. Therefore, AutoZone's motion also is granted as to the punitive damages award in the amount of $8,000.00 against it.

**III.     Conclusion**

For the reasons explained above, Plaintiff's motion for judgment as a matter of law on all claims decided against him [142] is denied, and Defendant AutoZone's motion for judgment as matter of law as to the one claim on which the jury ruled against it [147] is granted. Accordingly, the portion of the judgment entered on the jury's verdict in favor of Plaintiff and against AutoZone on Plaintiff's co-worker harassment claim and awarding $8,000 in punitive damages [144] is vacated and final judgment hereby is entered in favor of Defendants and against Plaintiff on all counts and claims.

Dated:  January 9, 2009

_____
Robert M. Dow, Jr.
United States District Judge